### In the Matter of Rene THORNTON a/k/a "Asha", Civil Contemnor.

#### No. M–11–188.

United States District Court, S.D. New York.

March 9, 1983.

---

Jane Parver, Asst. U.S. Atty., New York City, for the government.

James I. Meyerson, New York City, for contemnor.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Rene Thornton, a Grand Jury witness now being held in civil contempt for refusal to testify, moves for an order relieving her from the finding of civil contempt and directing her release forthwith from the custody of the United States Marshal for the Southern District of New York. For the reasons set forth below, contemnor's motion is denied in all respects and the Order of this Court dated May 11, 1982 is continued in full force and effect.

On March 11, 1982 Ms. Thornton was arrested on a material witness warrant issued in this district, pursuant to 18 U.S.C. § 3149. On May 10, 1982 she was subpoenaed to appear and testify before a federal grand jury in this district investigating a group of persons said to have engaged in a series of armed robberies, murders and other crimes, because the Government has reason to believe that she was linked to the crimes and closely associated with other participants, targets of the investigation.

Although immunity was granted pursuant to 18 U.S.C. §§ 6002 and 6003, Ms. Thornton refused to comply with the subpoena or with an order of this Court directing her to do so. The next day, May 11, 1982, this Court issued an order directing that Ms. Thornton be held in custody, pursuant to 28 U.S.C. § 1826(a), until she testified and provided the Grand Jury with handwriting exemplars, or until the expiration of the grand jury term, or until No-

vember 10, 1983, whichever occurred first. The handwriting exemplar issue is apparently moot, but the witness has not testified as directed.

In support of her instant motion for release, contemnor states that: (1) her initial refusal to comply with the subpoena coupled with her resolve to continue to refuse makes any further confinement "punitive" rather than coercive in nature; (2) her incarceration at the Metropolitan Correctional Center ("MCC") is "affirmatively punitive" because that institution is not designed for long term stays; and (3) humanitarian reasons justify her release. The Court finds these contentions unpersuasive.

Contemnor claims that her continued recalcitrance over a ten month period, places upon the Government the burden of establishing the coercive and therefore, non-punitive nature of any additional confinement. Absent proof by the Government that continued incarceration will induce compliance, contemnor argues, she must be released. This argument lacks merit.

■ The purpose of civil contempt is to coerce, not punish. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). In cases of indefinite civil confinement the court is called upon periodically to review the contemnor's status, to prevent a *de facto* sentence of life imprisonment. *Catena v. Seidl*, 65 N.J. 257, 262, 321 A.2d 225, 228 (1974). *Cf. Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972), holding that "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."

■ A contemnor held pursuant to 28 U.S.C. § 1826, however, faces no similar risk, because Congress in enacting the statute set an eighteen month maximum limitation on the incarceration of those who refuse to comply with grand jury requests. By Congressional definition, then, the eighteen month period is regarded as coercive, not punitive. *United States v. Dien*, 598

F.2d 743, 745 (2d Cir.1979). It would circumvent the intent of the statute to find that incarceration loses its coercive value and becomes solely punitive in less than the statutory period.

■ Of course it would require a crystal ball in most cases to analyze the mental processes of a contemnor so as to be able to find whether further continued confinement would or would not produce compliance. Ms. Thornton seems to believe that the contemnor's own *ipsa dixit* that she will never comply, is sufficient, after a period of confinement, to shift this impossible burden to the Government. She argues that her continued recalcitrance over the past ten months compels the inference that she will remain ever unwilling to comply, and therefore, she should be released.

This argument, if accepted, threatens to create two laws, one for the witness who remains intransigent in his defiance of a court order, and another for the weakling or coward who caves in after relatively brief incarceration.

This grand jury witness has a citizen's duty to perform. The law is entitled to every man's evidence. As the Supreme Court held in *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919):

"[I]t is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the Government is bound to perform upon being properly summoned . . . ."

See also, *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). No witness may place his personal views to the contrary, however strongly held, ahead of his duty to testify or comply with lawful orders of a duly constituted court or grand jury. To hold otherwise, or to establish a different standard for the timid, than for the resolute, would frustrate the legislative purpose of § 1826 and encourage witnesses to remain silent. We reject contemnor's position. See *United States v. Dien,* 598 F.2d 743, 745 (2d Cir. 1979); *In re Grand Jury Investigation (Braun),* 600 F.2d 420 (3d Cir.1979); *In re Grand Jury Proceedings Involving Eve Rosahn,* 697 F.2d 296 (2d Cir.1982).[1]

■ Contemnor also alleges that her confinement is "affirmatively punitive" because she is being held at the Metropolitan Correctional Center, in New York City, which she describes as a temporary holding facility. The order of this Court finding Ms. Thornton in contempt did not designate the location where she was to be held. Usually, confinement of a witness should be near the location where the grand jury sits. If contemnor really believes that she should be incarcerated in another place, she is free to request the Marshal to arrange a transfer, or, if necessary, apply to this Court by further motion.

1. In *Rosahn,* cited in the text, the Court of Appeals held:

"We also reject Rosahn's claim that her incarceration for contempt is punitive rather than coercive because it is clear that she will persist in refusing to comply out of 'principled non-collaboration with the grand jury.' This court rejected a similar argument in *United States v. Dien,* 598 F.2d 743, 745 (2d Cir.1979), stating that 'such an argument if sustained . . . in effect would emasculate section 1826.' Under that statute, she cannot be confined beyond eighteen months, a period that Congress regarded as coercive and not punitive."

Unfortunately, this forthright statement of the law, which reads directly on Ms. Thornton's principal claim here, is also accompanied by the now controversial limitation imposed by the Court of Appeals, but omitted in the Government's brief, p. 5, that:

"N.B. Since this statement does not constitute a formal opinion of this court and is not uniformly available to all parties, *it shall not be reported, cited or otherwise used in unrelated cases before this or any other court.*" (Emphasis added).

We are not cited to any judicial definition of what constitutes a "related" case for purposes of the "N.B." rule. However, this case arises out of the same grand jury's investigation of the same targets as did *Rosahn's* case (and those of other witnesses who have interposed a wall of silence between themselves and the authorities). We regard *Rosahn's* case as "related" to the instant case so as to permit citation and reliance.

Finally, contemnor argues that she should be released because she is the mother of a young child and it is unfair for the Government to force her to choose between her "principles" in refusing to testify and her desire to be with her child. While the Court retains its inherent power to modify or withhold a contempt citation and release a witness for "[h]umane considerations," *In re Cueto,* 443 F.Supp. 857, 864 (S.D.N.Y.1978), this is not the proper case to do so. As noted earlier, Ms. Thornton's refusal to testify is based solely upon her own decision to place her personal views above the obligations of citizenship. She remains incarcerated by her own choice, and, by recognizing her civic responsibility, can free herself tomorrow and rejoin her child. There is no reason for the Court to intervene in this case in the interests of "humane considerations."

The original term of the grand jury which was to expire on April 5, 1983 has now been extended to October 5, 1983. Section 1826(a)(2) of Title 28 U.S.C. provides that the period of confinement shall include extensions of the grand jury term, provided that the total confinement not exceed eighteen months. In this case eighteen months will have passed on November 10, 1983.

For the foregoing reasons the motion is denied.

So Ordered.