**In the Matter of Shaheem Malik JABBAR, a/k/a "John Crenshaw", Civil Contemnor.**

No. M–11–188.

United States District Court, S.D. New York.

March 9, 1983.

Jane Parver, Asst. U.S. Atty., New York City, for the government.

Susan V. Tipograph, New York City, for contemnor.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Mr. Shaheem Jabbar, a grand jury witness now being held in civil contempt for refusal to testify, moves for an order relieving him from the finding of civil contempt, and directing his release forthwith from the custody of the United States Marshal for the Southern District of New York.

For the reasons set forth and analyzed fully in our Memorandum and Order *In re Rene Thornton, a/k/a "Asha", Civil Contemnor,* 560 F.Supp. 183 (1983), familiarity with which is assumed, the contemnor's motion is denied in all respects, and the Order of this Court dated June 2, 1982 is continued in full force and effect.

■ Mr. Jabbar, together with Ms. Thornton and others said to number a total of nine recalcitrant witnesses, have adopted what movant describes as "a movement of non-collaboration" with grand jury investigations. In support of his motion for early discharge, Mr. Jabbar urges (Affirmation of Susan V. Tipograph, Esq., docketed February 28, 1983, ¶ 21) that "since the sole intent of incarceration pursuant to an adjudication of civil contempt is to 'coerce' a witness to cooperate, if the person will not be coerced the imprisonment is punitive and must be vacated." Mr. Jabbar now represents that he "will never cooperate with this grand jury investigation."

This contention is rejected here for essentially the same reasons that this Court rejected the same contention in *Matter of Rene Thornton, supra,* decided March 9, 1983. There is no factual or legal distinction between that case and this. Accordingly, repetition of the analysis therein contained would add nothing.

■ In addition to the "punitive" argument, this contemnor also urges other points. He says, first, that the grand jury procedures are being used illegally "to conduct discovery or prepare a pending indictment for trial." A grand jury witness has no standing to assert this contention. *Matter of Fula,* 672 F.2d 279, 283 (2d Cir.1982); *In re Grand Jury Proceedings Involving Eva Rosahn,* 671 F.2d 690, 695 (2d Cir.1982). Furthermore, this Court sees no reason to reject the representation of the Government that the underlying crime, which is the October 20, 1981 armed robbery of a Brinks armored truck in Rockland County, New York, has not yet been fully investigated, and that all participants and accessories are not known or indicted. So long as it is reasonably possible that accessories, co-conspirators, aiders and abetters or other participants remain unindicted, the exercise by the grand jury of its traditional powers may not be inhibited by this Court at the instance of a witness.

■ Secondly, counsel for movant, at oral argument, challenged an apparent disparity between the case of Mr. Jabbar and that of Bernardine Dohrn, another grand jury witness in the same investigation, whose commitment for civil contempt was vacated after seven months of recalcitrance while confined. See *In the Matter of the Subpoena Served Upon Bernardine Dohrn,* 560 F. Supp. 179 (S.D.N.Y.1983). She argued that the only difference between her client's case and that of Dohrn is that Dohrn was able to obtain supportive affidavits from "two of the nation's leading attorneys" (at 180), identified by name in a footnote, while Mr. Jabbar is unable to obtain such establishment support in justification for his own intransigeance. This Court rejects that analysis. Assuming for the argument that *Dohrn* was correctly decided, the decision is readily distinguishable on other factual grounds.

*Dohrn* was subject only to a direction to give handwriting exemplars to the grand jury. During her confinement it appeared that the grand jury in fact had adequate handwriting exemplars, augmented by letters written to the Court and petitions filed with the Warden (at 181). The Court

found in its discretion that "the value of the additional exemplars [sought] is extremely questionable" and that further imprisonment would be "for no discernible purpose, other than to justify her desire to be a martyr[1] and the Government's insistence that she comply."

The motion is denied.

So Ordered.

---

1. The eminent attorneys contended that Dohrn "is intractable in her views and beliefs to the point of fanaticism [and] may well perceive herself as a second Joan of Arc." (At 180).

While Saint Jeanne was canonized for what she did, probably most modern philosophers regard her as deranged.