760 F.2d 736
 UNITED STATES of America ex rel. Hugh E. THOM, Petitioner-Appellant,
v.
O.C. JENKINS, Warden of Metropolitan Correctional Center,
Respondent-Appellee,
Metal Improvement Company, Intervening Party Respondent-Appellee.
 No. 84-2590.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 7, 1985.
Decided March 12, 1985.
As Amended March 20 and May 7,[1] 1985.
 
 Robert S. Bailey, Chicago, Ill., for petitioner-appellant.
 Ralph A. Mantynband, Arvey, Hodes, Costello & Burman, Chicago, Ill., for respondent-appellee.
 Before CUMMINGS, Chief Judge, WOOD and CUDAHY, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Petitioner, Hugh Thom, appeals the denial of his petition for a writ of habeas corpus. Thom challenges his continued confinement for civil contempt for his failure to pay $115,172.68 in satisfaction of a judgment entered against him on November 21, 1983 in favor of Metal Improvement Co. Thom contends that the writ should issue because he is currently unable to pay the judgment and the coercive effect of the incarceration is therefore vitiated.
 
 I.
 
 2
 Metal Improvement Co., is a nation-wide provider of shot-peening services.[2] Hugh Thom was employed at Metal Improvement Co., through 1980 where he had access to confidential information on Metal Improvement's shot-peening business such as specifications, drawings, blueprints, pricing lists, etc. Thom took this confidential information with him when he left and used it to perform shot-peening services in competition with Metal Improvement Co. In February, 1981, a federal district court ordered Thom to return to Metal Improvement all confidential information obtained while employed, to file a certificate of compliance, and to stop shot-peening. Thom disobeyed, continuing to shot-peen, failing to turn over all confidential documents, and knowingly filing a false certificate of compliance.
 
 
 3
 On March 16, 1983, the court found Thom in civil contempt and ordered him to pay Metal Improvement Co. $20,614.37 and to file another certificate attesting to the turnover of all confidential information. A recalcitrant Thom continued to shot-peen, failed to pay the $20,614.37, and failed to file a new certificate of compliance. On November 21, 1983, the district court found Thom in civil and criminal contempt. The court committed Thom to the custody of the United States Marshal until he paid $39,832.41 to Metal Improvement Co. and filed a new certificate of compliance. The court also sentenced Thom to sixty days for criminal contempt after compliance with the civil contempt order. Finally, the court ordered Thom to disgorge to Metal Improvement Co. $115,172.68 he had received from American Motors Company for shot-peening.[3]
 
 
 4
 Thom paid the $39,832.41 and filed the certificate of compliance.[4] He did not, however, pay the $115,172.68, and on July 2, 1984, Judge Decker held a hearing on Metal Improvement's motion for an order to require Thom to satisfy the judgment. After the hearing, Judge Decker entered an order holding Thom in civil contempt for failure to pay and committed him to the custody of the United States Marshal until he pays Metal Improvement Co. $115,172.68 or until such further order of the court.[5] Thom appealed the civil contempt order but later withdrew the appeal pursuant to a settlement effort that ultimately fell through. Thom was incarcerated on August 16, 1984.
 
 
 5
 On August 23, 1984, Thom filed a petition for a writ of habeas corpus. After conducting a hearing on Thom's ability to pay, Judge Decker denied the petition on August 29. This appeal followed.
 
 II.
 
 6
 It is well-settled that "[c]ivil contempt is coercive in nature, and conseqeuntly there is no justification for confining on a civil contempt theory a person who lacks the present ability to comply." McNeil v. Director, Patuxent Institution, 407 U.S. 245, 251, 92 S.Ct. 2083, 2088, 32 L.Ed.2d 719 (1972) (citing Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948)). The district court found, after conducting two hearings, that as of August 29, 1984 Thom had the ability to pay the $115,172.68 judgment.[6] We review this factual finding to determine if it is clearly erroneous. See Walaschek & Associates, Inc. v. Crow, 733 F.2d 51, 53 (7th Cir.1984); Jewel Tea Co. v. Kraus, 204 F.2d 549, 551 (7th Cir.1953).
 
 
 7
 The record contains the following evidence which, if believed, supports a finding of present ability to pay:
 
 
 8
 1) A January 5, 1984 Supervision Report that Thom filed with his probation officer in an unrelated criminal matter. In this Report, Thom represented that he was president of Meromorphic Labs., that he was receiving $15,000 per month in salary and had been receiving this salary since the last Report, that he had $260,000 in savings, that he owned a 1982 Lincoln Continental, and that he had no indebtedness. Metal Improvement Co.'s Appendix.
 
 
 9
 2) Thom's March 14, 1984 deposition testimony that the January 5 Report was true except for his statement of income which was left in a "grey area." Pet.App. 80.
 
 
 10
 3) Thom's July 2, 1984 hearing testimony that he had represented the truth to his probation officer in the January 5 Report, that the Report was in his hand, and that he had carefully prepared it and checked it before signing it. Pet.App. 6.
 
 
 11
 4) John Burns's deposition testimony that in December of 1983, while Burns was Thom's lawyer, Thom made an offer to pay in excess of $100,000 down on a $300,000 house, Pet.App. 36-38, and that Thom was still president of Meromorphic Labs. when Burns left the Company in April of 1984. Pet.App. 33-34.
 
 
 12
 5) Thom's July 2 and August 29 hearing testimony that he had solicited $100,000 to $150,000 from several investors for a venture named Miragama, Inc.,[7] a venture intended to manufacture cutting tools in Puerto Rico, and that he was one of three signatories on a bank account set up with the funds. Pet.App. 7-8, 74, 87.
 
 
 13
 The record contains the following evidence which, if believed, supports a finding of no present ability to pay:
 
 
 14
 1) Thom's July 2 hearing testimony that he did not have $260,000 in savings on January 5, but represented to his probation officer that he did because he intended to have it in the future, Pet.App. 8-9; that he resigned as president of Meromorphics soon after January 5, Pet.App. 10-11; that on July 2 he was a consultant for Applied Technologies receiving only $500 per week on an irregular basis, and had received only $1,500 since November 21, 1983, Pet.App. 19-20; and that, although a signatory on the Miragama bank account, he had no control over the account and did not know where the funds were. Pet.App. 8.
 
 
 15
 2) Thom's August 29 hearing testimony that he lied in his January 5 Supervision Report, Pet.App. 77, 80, 88; that he never owned the Lincoln listed in the Report and that the car belonged to his partner in Merrilgamics,[8] Pet.App. 76-78, 88; that over the last three months his only income had been about $2,000 from Applied Technologies, Pet.App. 67; that other than a five-percent interest in Applied Technologies worth about $2,500 and some worthless stock in the almost bankrupt Miragama company he has no investments or other valuable assets, Pet.App. 67-70; that he is indebted to the tune of $250,000, $40,000 of which he borrowed from his fiancee, Pet.App. 70-71, $55,000 of which he borrowed from the Miragama stockholders, Pet.App. 71, and $118,000 of which he owes to attorneys, Pet.App. 72; that he used $39,823 of the borrowed money to pay Metal Improvement attorneys, Pet.App. 71; and that he borrowed an additional $11,000 from his fiancee to pay Avid Engineering on a criminal restitution judgment in June or July of 1984, Pet.App. 71-72; that, of the $100,000 he received from investors in Miragama, some went to pay two salesmen, $20,000 went to pay for a promotional tour taken by Thom and two others to Yugoslavia and Puerto Rico, and $55,000 went to Thom as a loan, Pet.App. 75-76; that he is not free to use any part of what might remain of the $100,000 to pay the judgment, Pet.App. 87-88.
 
 
 16
 To decide the present ability to pay issue in this case we must decide which of Thom's two stories to believe: the story he told to his probation officer of substantial wealth and income and no indebtedness, or the story he told to the district judge of virtually no wealth or income and substantial indebtedness. The district judge believed Thom's first story and we uphold the decision.
 
 
 17
 Because district court judges are in a much better position to assess the credibility of a witness than we are, we give great deference to their credibility judgments. Deference aside, however, this record strongly supports Judge Decker's credibility assessment. Thom's first story, the one he told his probation officer, was corroborated by Thom himself in testimony given in the early part of the July 2 hearing and by Thom's former attorney, John Burns, in his deposition testimony. In contrast, Thom's second story, the one he told Judge Decker in the latter part of the July 2 hearing and throughout the August 29 hearing, was self-serving, at times confusing and contradictory,[9] and uncorroborated by third-party testimony or financial records such as cancelled checks, bank statements, or income tax returns.
 
 
 18
 Thom argues that even if the court chooses to believe his first story it cannot continue to hold him in contempt because that story only concerns his ability to pay in early January of 1984, whereas his second story is the only one that concerns his ability to pay on August 29, 1984; and present, not past, ability is the pivotal issue in civil contempt proceedings. We do not think this argument accords with the burden of production rule that governs civil contempt cases.
 
 
 19
 It is well-settled that if a court finds that a defendant could at some time in the past have complied with a court order, the court should presume a present ability to comply and impose on the alleged contemner the burden of producing evidence to establish present inability. See United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983); Maggio, 333 U.S. at 75, 68 S.Ct. at 411. Once the defendant satisfies his burden of production, the burden of persuasion shifts back to the side seeking the contempt order. See Rylander, 460 U.S. at 757, 103 S.Ct. at 1552. In this case the district court found that Thom had the ability to pay on January 5, 1984. Pet.App. 59-60. This finding grounded a presumption of an ability to pay on August 29, 1984 and imposed on Thom the burden of producing evidence that between January 5 and late August he had become unable to pay. Thom attempted to meet this burden with his testimony, but we hold that his attempt failed because his testimony was self-serving, self-contradictory, confusing, and uncorroborated; and for these reasons, the district judge rightly found it incredible. See Maggio, 333 U.S. at 75-76, 68 S.Ct. at 411-412 (a defendant does not meet his burden with incredible evidence); see also Rylander, 460 U.S. at 757-58, 103 S.Ct. at 1552-53 (a defendant does not meet his burden with an ex parte affidavit and uncross-examined testimony denying his present ability to comply).
 
 III.
 
 20
 Our affirmance of the district court's denial of the writ does not of course settle this controversy, for Thom still sits in prison claiming inability to pay and Metal Improvement Co. remains unpaid. We therefore order the district court to regularly review petitioner's incarceration at reasonable intervals or when specifically requested by either party in the court's discretion. At these review hearings, both parties should be allowed to present new evidence of Thom's present ability to pay, or his past ability to the extent it is relevant to the present.
 
 
 21
 In conclusion, we note that each passing month of incarceration strengthens Thom's claim of inability, see Maggio, 333 U.S. at 76, 68 S.Ct. at 411, for it can be assumed that at a certain point any man will come to value his liberty more than $115,752.68 and the pride lost in admitting that he has lied. Of course that point cannot be identified in the abstract and we leave that determination to the discretion and good judgment of the district judge. We also note that although incarceration for civil contempt may continue indefinitely, it cannot last forever. See Maggio, 333 U.S. at 76, 68 S.Ct. at 411. If after many months, or perhaps even several years, the district judge becomes convinced that, although Thom is able to pay he will steadfastly refuse to yield to the coercion of incarceration, the judge would be obligated to release Thom since incarceration would no longer serve the purpose of the civil contempt order--coercing payment.
 
 
 22
 For the foregoing reasons, we affirm the denial of the writ and instruct the district court to reconsider Thom's incarceration at reasonable intervals.
 
 AFFIRMED.[10]
 
 
 [1]
 The opinion was amended pursuant to Metal Improvement Company's Appellee's Petition to Modify filed March 19, 1985. In view of the amendments the petition is denied
 
 
 [2]
 Shot-peening is the bombarding of metal with steel shot or shot of other material to modify the compressive stresses generally associated with metal and thus enhance the metal's usefulness
 
 
 [3]
 The record does not disclose some of the details concerning the nature and basis for the district court orders of February, 1981, March 16, 1983, and November 21, 1983 or Thom's compliance with those orders. The missing details are not, however, necessary for deciding this appeal concerning the July 2, 1984 civil contempt order
 
 
 [4]
 The record does not disclose whether or not Thomas has served the sixty-day sentence for the criminal contempt
 
 
 [5]
 While the record contains evidence which might support holding Thom in criminal contempt, it is clear that the judge based his incarceration order on a civil contempt theory. First, Judge Decker said it was a civil contempt order when the distinction was called to his attention at the July 2 hearing, Pet.App. 55; second, the procedural prerequisites to a judgment of criminal contempt have not been met; and third, the order gives no definite length of incarceration, but rather makes it contingent upon Thom's compliance with the order or further notice of the court
 
 
 [6]
 Thom contends that the district judge never decided the issue of Thom's present ability to pay. We disagree. Although the judge expressly refused to decide the issue at the July 2 hearing, he decided the issue against Thom at the August 29 hearing when he said: "[I] am entering this order and continuing this order on the basis that in two different court proceedings [Thom] said he's had that money [i.e., $115,172.68] and I haven't heard sufficient explanation as to why he doesn't have it or why it can't be available to pay this judgment." Pet.App. 107
 
 
 [7]
 The transcript of the July 2 hearing refers to "Miragama," while the transcript of the August 29 hearing refers to "Merrilgamma." It appears that these references are to the same company. To avoid confusion we refer to this company as "Miragama."
 
 
 [8]
 Merrilgamics is apparently a company different from Miragama
 
 
 [9]
 Compare, e.g., Thom's testimony at Pet.App. 5 that he is not a shareholder in Applied Technologies with his testimony at Pet.App. 67-68 that he owns five-percent interest in Applied Technologies worth about $2,500; Thom's testimony at Pet.App. 6 that he told his probation officer the truth with his testimony at Pet.App. 77, 80, & 88 that he lied to his probation officer; Thom's testimony at Pet.App. 7-8 that he solicited $100,000 from Miragama investors with his testimony at Pet.App. 74 that he solicited about $120,000 with his testimony at Pet.App. 87 that he might have solicited as much as $150,000
 
 
 [10]
 In view of our decision the petitioner's February 5, 1985 renewed motion for release pending appeal is moot and therefore dismissed