[Nos. 7986-4-III; 8332-2-III.   Division Three.   May 26, 1987.]

DAWSON KING, ET AL, *Appellants,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*In the Matter of the Personal Restraint of* DAWSON KING, *Petitioner.*

---

*Dawson King,* pro se, and *Mark E. Wilson* of *University Legal Assistance,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Maureen E. McGuire, Assistant,* for respondent.

McINTURFF, C.J.—This appeal presents issues which arise from two decisions made by the Stevens County Superior Court: (1) an order finding Stevens County had jurisdiction to consider a dependency petition filed on behalf of J.; and (2) an order incarcerating the child's father, Dawson King, for contempt of court based upon his refusal to disclose the location of the child. We affirm the finding that Stevens County had jurisdiction; we reverse the order incarcerating Dawson King.

Twin boys, J. and L., were born prematurely to Dawson and Sarah King on March 11, 1985, in Spokane, Washing-

ton. Shortly after their birth, from approximately September to December 1985, their mother was hospitalized at Eastern State Hospital for depression and suicidal tendencies. In December 1985, while the children were in the care of relatives in southern Idaho, L. suffocated after allegedly being trapped between a mattress and a wall. An examination revealed broken bones and a skull fracture which *had healed* and which were believed to have occurred in November 1985. Because of the nature of L.'s injuries, J. was examined and was also found to have similar injuries. It was later revealed the babysitter's daughter claimed to have fallen down stairs while carrying both children. The record does not reveal whether criminal charges were filed, but it is undisputed Mr. King was in Washington State during the suffocation incident.

Mr. King brought J. back to the Colville area after L.'s death. On February 2, 1986, a caseworker from the Department of Social and Health Services (DSHS) contacted Mr. King and informed him of J.'s need for follow–up care. The caseworker talked with Mr. King at his home in Colville and observed a small child, identified by Mr. King as J., playing in the house. Mr. King brought his son to Deaconess Hospital. An examination revealed only the old injuries; after confirming the cause of those injuries to be the incident in Idaho, Deaconess released the child to his father.

On February 14, 1986, a complaint was made to Child Protective Services (CPS) by Sarah King, who was then a patient in the psychiatric ward of Sacred Heart Hospital in Spokane. She alleged Mr. King had violently spanked the twins, put tape over their mouths and dunked them into cold water to stop their crying, after they were approximately 3 months old and while the children were on the heart monitoring system. In an affidavit submitted to the trial court in June 1986, Mrs. King recanted these allegations.

As a result of Mrs. King's statements, a caseworker met with Mr. King at his home on February 14, 1986. Mr. King denied his wife's assertions and refused to produce the

child or disclose his location. He said that the child was in good health and was with a babysitter in Spokane. The caseworker expressed concern about the child while in the care of the babysitter and a desire to insure the boy's safety. Mr. King agreed to meet the caseworker that night in Spokane and bring the child; however, they failed to appear. A dependency petition was filed and a shelter care order signed on February 19, 1986, alleging the child to be abused or neglected. A hearing was set for April 4, 1986.

On March 3, 1986, an attorney appeared on behalf of the child; on March 21, an attorney appeared for Mr. King. The original hearing date was continued to May 23 to allow the State to substitute counsel. A response to the petition was filed by Mr. King's attorney on April 30 alleging, *inter alia*, lack of jurisdiction, improper venue and insufficiency of process.

Mr. and Mrs. King were served with the dependency petition on May 27, 1986, the day of the hearing. The notice and summons ordered the Kings to appear at the hearing May 27 and to bring the child to the hearing. The following notice also appeared: "Violation of This Order or Summons Is Subject to Proceeding for Contempt of Court Pursuant to RCW 13.34.070." An order entered the same day advised the Kings to make the child available at the DSHS office on June 23 and set a shelter care hearing on June 27. On June 24, DSHS moved for an order to show cause why Mr. King should not be held in contempt for failing to produce the child as ordered by the court on May 27. The motion was granted and the order noted the following:

> Dawson and Sarah King are hereby required to appear on June 27, 1986 at 1:30 p.m., to show cause, if any they may have, why contempt charges should not be filed against them for their failure to comply with the aforementioned order requiring them to produce the minor child in question.

The note for hearing/issue of law statement cited the applicable statute as RCW 7.20.040.

At the hearing June 27, several orders were entered. The first allowed Mr. King's counsel to withdraw and to substitute new counsel. The court also concluded it had sufficient reason to exercise jurisdiction over the matter, despite testimony from Mr. King and his witnesses that he had not been a resident of the state since early February 1986. Because the Kings failed to bring the child to the hearing and refused to disclose his location, the court found both parents in contempt, pursuant to RCW 7.20.110, and ordered them confined

> until such time as they, individually or jointly, shall disclose the specific location of the child, [J.], and such disclosure is verified by the DSHS/DCPS, and the child, [J.], is placed in shelter care in Washington State or other equivalent protective custody in another state. No bond is permitted:

Mrs. King was released shortly after her confinement when the court was advised she did not know the location of the child. Mr. King has remained confined since June 27, 1986; there have been no subsequent appearances before the trial court for the purpose of purging the contempt.

On July 21, Mr. King filed a notice of appeal from the jurisdiction order, asserting a court cannot find contempt where there is no jurisdiction.

An emergency motion to release Mr. King pending the appeal was argued before a commissioner of this court on September 3, 1986, but the request was denied because (1) the record disclosed a prima facie showing of jurisdiction to support the incarceration, and (2) the order was facially coercive. The matter was then set for argument on the merits November 13, and continued until December 16, 1986. On November 15, 1986, Dawson King, in a letter addressed to the Stevens County trial judge, claimed his Fifth Amendment privilege and requested release from jail. The letter was filed with the Court of Appeals November 19, 1986. Mr. King also indicated he would represent himself (pro se). A personal restraint petition was filed January 9, 1987; in the petition he noted a habeas corpus petition

had been filed and denied by the trial court.[1]

## JURISDICTION

Mr. King contends he moved to Utah prior to the filing of the petition and his witnesses, who were uncontroverted, substantiated his change in residency. The court chose to disbelieve their statements and found jurisdiction based upon Mr. King's receipt of a public assistance grant for the month of February and the fact he left no forwarding address at the Colville Post Office.

RCW 13.34.040 provides:

Any person may file with the clerk of the superior court a petition *showing that there is within the county, or residing within the county,* a dependent child and praying that the superior court deal with such child as provided in this chapter . . .

(Italics ours.)

This court's review is limited to whether there is substantial evidence to support the trial court's findings and, if so, whether the findings in turn support the trial court's conclusions of law and the judgment. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Lahart v. Lahart,* 13 Wn. App. 452, 457, 535 P.2d 145 (1975).

Mr. King argues his witnesses presented uncontroverted testimony he was no longer a resident of the state of Washington, yet the judge failed to explain in the findings why he chose to disbelieve those witnesses. Even though the trial judge did not make a specific finding on this matter, this court is entitled to look to his oral opinion to supplement the findings. *In re Marriage of Curran,* 26 Wn. App. 108, 110, 611 P.2d 1350 (1980). An examination of the oral decision indicates that the court did consider the credibility of Mr. King's witnesses and for reasons enumer-

---

[1]The appellate court hearing was continued several times to allow Mr. King to submit a brief. The personal restraint petition was consolidated with the jurisdiction appeal; at Mr. King's request, an attorney was appointed for him on the personal restraint petition by this court on April 20, 1987. The matter was accelerated to allow oral argument May 19.

ated therein concluded they were not believable. It is not the function of this court to review decisions related to the credibility of witnesses. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

The court further found that Mr. King had lived in the state of Washington on and off during the past 5 years; Mr. King's brother, sister and mother lived in Colville, Washington; and Sarah King's family also resided in Stevens County. There was sufficient evidence to support the court's conclusion it had jurisdiction to hear the matter.

■ Additionally, we note the applicable sections of the Uniform Child Custody Jurisdiction Act provide that a custody proceeding includes child neglect and dependency proceedings. RCW 26.27.020(3).

Further, RCW 26.27.020(5) defines home state:

> (5) "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned.

The jurisdictional requirements of RCW 26.27.030[2] are met

---

[2]RCW 26.27.030 provides:

"Jurisdiction. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(c) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

under these particular facts. Even though the trial court did not consider this statute as the basis for jurisdiction, it is clear that this appellate court can affirm a decision of the trial court on any basis. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984). Under this statute, the following facts are pertinent: (1) a child identified as J. was seen at the family home on February 5, 1986, by a CPS caseworker; (2) the King family received a public assistance grant for the month of February 1986 (a requirement for receipt of public assistance is residency in this state); (3) Mr. King had personal contact with a caseworker on the morning of February 14, at which time he agreed to produce the child that evening in Spokane, and indicated to the caseworker that the child was in Spokane; (4) Mr. King appeared February 28 at the financial aid office in Colville, Washington, to terminate his public assistance grant because of his change in residency; and (5) the caseworker verified Mr. King's address with the Colville Post Office. Finally, the trial judge made an unsolicited offer to transfer jurisdiction to a more appropriate state if Mr. King would disclose the location of his son. This offer was never accepted.

Counsel for Mr. King in their response to the dependency petition filed last spring and again at oral argument, contend there was no jurisdiction because service on the Kings was not completed until May 27, 1986, 97 days after

---

"(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

"(2) Except under subsection (1)(c) and (d) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

the filing of the petition on February 19.[3] Service on the parents of a summons and copy of the dependency petition is a requirement of the act. RCW 13.34.070; JuCR 3.4. The only time requirement mentioned in the statute is at RCW 13.34.070(7):

> If a party to be served with a summons can be found within the state, the summons shall be served upon the party personally at least five court days before the fact–finding hearing, or such time as set by the court.

Here, the hearing date was continued until June 27; thus service May 27 satisfied the statute. Additionally, Mr. King's attorney made a general appearance on his behalf March 21. RCW 4.28.210. Thus, any argument on this ground has been waived. *White v. Million,* 175 Wash. 189, 196, 27 P.2d 320 (1934). We conclude there was no error in the court's conclusion it had jurisdiction.

## PERSONAL RESTRAINT PETITION

We next consider issues raised by the personal restraint petition. The first issue is whether the court had authority to exercise its contempt power under RCW 7.20.110 or was it limited to the contempt sanctions found in RCW 13.34-.165. The order of contempt and warrant of commitment referenced the court's authority under RCW 7.20.110.

We must determine the effect of RCW 7.20.010, the general civil contempt statute, as it relates to RCW 13.34.070, the juvenile contempt statute.

RCW 7.20.010 states:

> The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court:
>
> . . .
>
> (5) Disobedience of any lawful judgment, decree, order or process of the court.

RCW 7.20.110 provides:

---

[3]We note the court in its findings stated: "Prior to May 23, 1986, the parents had not been served either personally or by publication with notice and summons of this dependency."

> Imprisonment until act performed. When the contempt consists in the omission or refusal to perform an act which is yet in the power of the defendant to perform, he may be imprisoned until he shall have performed it, and in such case the act must be specified in the warrant of commitment.

Thus, under this civil contempt statute, Mr. King may be confined for an indeterminate time. However, this statute provides different sanctions than the juvenile court act, *i.e.,* RCW 13.34.070:

> (6) If the person summoned as provided in this section is subject to an order of the court pursuant to subsection (4) or (5) of this section, and if the person fails to abide by the order, he may be proceeded against as for contempt of court. The order endorsed upon the summons shall conspicuously display the following legend:
> Notice:
> Violation of This Order Is Subject to Proceeding for Contempt of Court Pursuant to RCW 13.34.070.

Subsection (4) of the same statute provides:

> (4) The judge may endorse upon the summons an order directing any parent, guardian, or custodian having the custody or control of the child to bring the child to the hearing.

Here, the judge did make such an endorsement.

RCW 13.34.165 provides:

> (1) Failure by a party to comply with an order entered under this chapter is punishable as contempt.
> (2) Contempt under this section is punishable by confinement for up to seven days.
> . . .
> (4) The procedure in a contempt proceeding under this section is governed by RCW 7.20.040 through 7.20.080.

Those specific sections of RCW 7.20.040 through 7.20.080 provide for an order to show cause why the defendant should not be arrested, an order that the defendant answer the contempt charges and a hearing to determine whether the defendant is, in fact, in contempt of court.

Intentional disobedience of a lawful order is contempt. *Mathewson v. Primeau,* 64 Wn.2d 929, 934, 395 P.2d 183

(1964); *State v. Norlund,* 31 Wn. App. 725, 728, 644 P.2d 724 (1982). A juvenile court has authority to punish by civil contempt for purposes of compelling compliance with an order. *State v. Martin,* 36 Wn. App. 1, 4, 670 P.2d 1082 (1983), *rev'd on other grounds,* 102 Wn.2d 300, 684 P.2d 1290 (1984). Whether contempt of court is warranted is within the discretion of the court and unless there is an abuse of that discretion, it will not be disturbed on appeal. *Schuster v. Schuster,* 90 Wn.2d 626, 630, 585 P.2d 130 (1978). A court should order imprisonment as a sanction of last resort, only when there are no reasonable or effective alternatives available. *Rainier Nat'l Bank v. McCracken,* 26 Wn. App. 498, 516, 615 P.2d 469 (1980); *Yamaha Motor Corp. v. Harris,* 29 Wn. App. 859, 866, 631 P.2d 423 (1981). Here, there was no finding other alternatives were inadequate.

It is not necessary for us to decide whether the court was limited in its exercise of contempt authority, either by the notice given to Mr. and Mrs. King or by statutory construction case law. Under either standard, we find the court, at this time, has exceeded its authority.

A court may use civil contempt under RCW 7.20.010 as both a coercive and punitive remedy, *State v. Heiner,* 29 Wn. App. 193, 197, 627 P.2d 983, *review denied,* 97 Wn.2d 1009 (1981), but not solely as a punitive remedy. *Heiner.* Here, the underlying reason for the contempt finding was an attempt to locate the child, to insure his safety. At some point in time over the past 11 months, the court's attempt to coerce Mr. King to disclose the location of the child has become secondary to the punitive nature of the contempt. Because Mr. King is incarcerated, it is obvious he has had no physical contact with the child, so we cannot assume he is directly responsible for any abuse or neglect which the child may be experiencing.

Several federal cases have addressed the issue of the duration of a civil contempt sanction. In *Simkin v. United States,* 715 F.2d 34, 37 (2d Cir. 1983), the court ruled that as long as the judge is satisfied that the coercive civil contempt sanction might produce its intended result, the con-

finement may continue. However, if the judge is persuaded, after conscientious consideration of the circumstances pertinent to the individual contemnor that the contempt power has ceased to have a coercive effect, the civil contempt remedy should be ended. It is also necessary that the court grant periodic reviews to prevent a civil contempt sanction from becoming a de facto sentence of life imprisonment. *In re Thornton,* 560 F. Supp. 183 (S.D.N.Y. 1983). Mr. King has not been given an opportunity to purge himself since his confinement began in June 1986.

A civil contempt incarceration cannot last forever. *United States ex rel. Thom v. Jenkins,* 760 F.2d 736, 740 (7th Cir. 1985). If, after the passage of time, a judge becomes convinced that, although a contemnor is able to comply with the order, but will steadfastly refuse to yield to the coercion of incarceration, that judge must release him because incarceration no longer serves the purpose of coercion; it has become punitive. *Thom.*

We conclude, as a matter of law, Mr. King's confinement has become punitive; he must be released.[4]

The order of confinement is terminated; the personal restraint petition is granted.

GREEN and THOMPSON, JJ., concur.

Reconsideration denied June 15, 1987.

Review granted by Supreme Court October 6, 1987.

---

[4]Because of our decision to vacate the contempt order, we do not address the issue of the Fifth Amendment privilege.