**In re Homer G. WALTERS and Evolene Walters, Debtors.**

**Charles L. BURD, Plaintiff–Appellant,**

**v.**

**Homer G. WALTERS and Evolene Walters, Defendants–Appellees.**

**87–1114.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1988.

Decided March 1, 1989.

Deana L. Cooper (Burd & Cooper on brief), for plaintiff-appellant.

James Strother Crockett, Jr. (Mays & Valentine on brief), for defendants-appellees.

Before POWELL, Associate Justice, Retired, and WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Charles L. Burd appeals from the district court's affirmance of the bankruptcy court's order requiring him to repay certain attorneys' fees to his client and its order finding him in civil contempt. Burd challenges the bankruptcy court's jurisdiction to review the fees in question, its discretion in reducing the attorneys' fees, its conclusion that his actions constituted civil contempt, its power to hold him in civil contempt, and its discretion in awarding sanctions in connection with the contempt finding. We largely affirm, but vacate one item of the sanctions for contempt.

On October 24, 1980, Homer G. Walters and Evolene Walters filed their petition in bankruptcy. The case commenced under Chapter 13, but was later converted to Chapter 7. BancOhio National Bank (BancOhio), one of Walters' larger creditors, filed an adversary proceeding against the Walters, contesting the dischargeability of its claim against them. In response, Walters engaged Charles Burd to file suits in Ohio against BancOhio alleging various business torts. Burd agreed to a contin-

gent fee contract with the contingency based not on the outcome of the litigation but on whether certain insurance proceeds were exempt assets under the bankruptcy code. Burd also agreed to a fee splitting arrangement with R.R. Fredeking, the principal attorney representing the Walters in the bankruptcy, so that Burd and Fredeking would split a third of the insurance proceeds if found exempt. Burd's representation of the Walters did not have prior approval of the bankruptcy court. BancOhio eventually settled the suits brought by Burd. It agreed to withdraw from its position in the bankruptcy court and was paid $21,000. In return, the Walters agreed to drop their civil suits in Ohio. A part of the settlement was that the Walters kept their home. In a separate proceeding, the insurance proceeds in question were held to be exempt from the bankrupt estate.

On February 22, 1984, the bankruptcy court considered Burd's representation of the Walters. It instructed Walters to keep $40,000 to create a pool of money to pay the various legal fees after the court examined them for reasonableness. On February 28, 1984, however, on Burd's instructions, without approval of the bankruptcy court, Walters gave Burd a check for $59,-191.96 for legal fees due Burd, Fredeking and Charles Cooper.

The bankruptcy court had a hearing on fee applications on June 5, 1984, but Burd failed to appear. On June 18, 1984, the court ordered Burd to make a fee application for fees he had already received from the Walters. After a July 24, 1984 hearing on Burd's application, the bankruptcy court, on September 28, 1984, ordered Burd to repay $14,000 of his $29,000 fee from Walters.[1] On December 26, 1984, the bankruptcy court ordered Burd to appear and show cause why he should not be held in contempt for failing to repay the $14,000 as ordered. On January 14, 1985, Burd's attorney, William Pepper, presented a $14,-000 check to the bankruptcy court, togeth-

---

1. We think there was no abuse of discretion by the bankruptcy court in fixing the amount of the fee.

er with an order which would have required the clerk to hold the funds pending appeal. The court refused to enter the order, insisting the funds be held only for 21 days and then, if no stay had been granted by the district court, given to the Walters. Pepper took back the check and the order. Forty-three days later, on February 26, 1985, not having received a stay from the district court, a new order from Pepper, or the check, the bankruptcy court issued an order holding Burd in civil contempt. Burd appealed to the district court, which affirmed the order of the bankruptcy court.

■ Burd challenges the bankruptcy court's power to review the attorneys' fees paid to him by Walters. He takes the position that since the agreement was with respect to exempt funds, any agreement between himself and the Walters was not subject to court approval.

11 U.S.C. § 329 requires:

(a) Any attorney representing a debtor in a case under this title, *or in connection with such a case, whether or not such attorney applies for compensation under this title,* shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made ... for services rendered or to be rendered in contemplation of *or in connection with the case by such attorney* and the source of such compensation.

(b) If compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

   (1) the estate, if the property transferred—

      (A) would have been property of the estate; or (B) was paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

   (2) *the entity that made such payment.* (Emphasis added)

Bankruptcy Rule 2017 implements § 329. § 2017(b) states: *Payment or Transfer to Attorney After Commencement of Case.* On motion by the debtor or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money ... by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made directly or indirectly, if the payment, transfer, or agreement therefor is for services *in any way related to the case.* (Emphasis added)

"[T]hese provisions [§ 329 and B.R. 2017] furnish the court with express power to review payments to attorneys for excessiveness...." *In Re Martin,* 817 F.2d 175, 180 (1st Cir.1987).

Burd argues that the bankruptcy court is without power to review the attorneys' fees at issue for the reason that they were not for services sufficiently connected to the bankruptcy for a bankruptcy court to exercise authority over them. Certain services by attorneys, it is true, are so unconnected to bankruptcy that a bankruptcy court is without jurisdiction to review them under § 329. See, for example, *In Re Swartout,* 20 B.R. 102, 106 (Bankr.S.D.Ohio 1982) (refusing a fee request from an attorney who handled the bankrupt's divorce, finding that the divorce was not " 'connected with' the [bankruptcy] case at bar as contemplated in 11 U.S.C. § 329(a)"). Bankruptcy Rule 2017(b)'s only requirement for review, however, is that the services be "in any way related to the [bankruptcy] case." Burd's service in filing the two civil suits in Ohio against BancOhio for the Walters was a direct reaction to BancOhio's adversary proceedings which alleged fraud and was brought in the bankruptcy court. The suits, in essence, were a way to gain bargaining power with BancOhio, a major creditor, to coerce the bank to withdraw from a position taken in the bankruptcy court. Burd, himself, testified that as a result of his services the Walters were able to retain their personal residence, other real property, and reduce their personal indebtedness by thousands of dollars. Such services meet Bankruptcy Rule 2017(b)'s requirement that the services be "in any way related to the [bankruptcy] case," and the requirement of § 329(a) that they be "in connection with such a case."

Burd next contests the bankruptcy court's right to review the fees since the Walters paid him from exempt funds. He argues that the court should have no power over funds that are exempt. Neither § 329 nor B.R. 2017 requires that attorneys' fees be paid from non-exempt funds in order to be subject to review by a bankruptcy court. The regulatory effect of neither § 329 nor B.R. 2017 is conditioned on the source of payment; rather, it depends upon the nature of the services rendered. The provisions are meant to protect the creditors *"and the debtor* against overreaching" by attorneys. Advisory Committee Note to B.R. 2017 (emphasis added). This view is consistent with the structure of § 329(b) which allows the court to order the attorney to return excess payments to the estate or even to "the entity that made such payment." Accordingly, we hold that § 329 applies in this case and that the fees in question are subject to the control of the bankruptcy court. We are of opinion that any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment. *In Re Furniture Corp. of America,* 34 B.R. 46 (Bankr.S.D. Fla.1983).

Burd also challenges the district court's finding that his actions constituted civil contempt of court. To recount somewhat, on September 28, 1984, the bankruptcy court ordered Burd to repay promptly $14,-000 of attorneys' fees to the Walters. On December 26, 1984, the bankruptcy court ordered Burd to appear and show cause why he should not be held in contempt for his failure to comply with the September 28, 1984 order. On January 9, 1985, William Pepper, an attorney representing Burd, appeared before the bankruptcy court and offered an order granting a stay of the September 28 order to the bankruptcy court. The bankruptcy court refused to enter the order, finding that Walters had not agreed to it. On January 14, 1985, Pepper presented a $14,000 check and an order which would require the clerk to hold the funds pending appeal. The bankruptcy court rejected the order, insisting the funds

be held only for 21 days and then, if no stay was granted by the district court, given to the Walters. Pepper took back the check and the order. Forty-three days later, on February 26, 1985, having not received a stay from the district court, a new order from Pepper, or the check, the bankruptcy court issued an order holding Burd in civil contempt.

■ Burd argues that a finding of contempt is improper in a situation where the party was willing to perform. The flaw in the argument is that he was held in civil, not criminal, contempt. "The absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance ... [citations omitted]. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

Burd also argues that he should not be held in contempt, for his attorney, Pepper, was the one who violated the order. Burd points out that he delivered the check to Pepper, expecting him to comply and was unaware of later events. This argument is also without merit.

■ Because the defense of Burd's, that Pepper should be blamed, amounts to a defense of advice of counsel in a prosecution for contempt, the defense is unavailing here. Advice of counsel may be a defense in a criminal contempt proceeding because it negates the element of willfulness. *United States v. Armstrong,* 781 F.2d 700 (9th Cir.1986); *NLRB v. Berkley Machine W. & F. Co.,* 189 F.2d 904 (4th Cir.1951). But, since lack of willfulness is not a defense in a proceeding for civil contempt as *McComb* holds, its negation is not a defense to the action. This case, rather, falls under the rule of *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962), to the effect that one cannot voluntarily choose an attorney and then avoid the consequences of the

attorney's acts or omissions. See also *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1878), quoted in *Link*.

Burd's next challenge is to the power of the bankruptcy court to hold him in contempt. He alternately takes the position that there is no statutory authority, and, if there is statutory authority, then such is an unlawful allocation by Congress of contempt power, which Burd contends is reserved exclusively to Article III courts, the courts of bankruptcy, of course, being Article I courts.

■ 11 U.S.C. § 105(a), in effect at the time the order convicting Burd of contempt was entered, provided as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.[2]

We see no reason to read into this language anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code. We are of opinion that the order holding Burd in civil contempt was appropriate in carrying out the provisions of that code. Burd had been engaged in representing a debtor during the pendency of a case in bankruptcy and in connection with the case for which he had charged and received a fee without previous authority or approval of the bankruptcy court. Following a hearing on the matter, Burd was ordered to refund $14,000 of the fee and had not done so. We think an order holding him in contempt for his failure to comply with the previous order of the court

was appropriate in carrying out the administration of the estate, and thus was authorized by 11 U.S.C. § 105(a). We should not leave the subject without noting that the Ninth Circuit has come to the opposite conclusion in *In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281 (9th Cir.1987). The opinion in *Sequoia Auto Brokers* seems largely based on the reasoning that that court did not believe Congress would have conferred contempt power on a bankruptcy court without limiting that power. While the argument may have some persuasive validity, we think it insufficient to overcome the plain language of the statute and the fact that former § 1481 of the Code, repealed by the 1984 amendments, rather plainly conferred civil contempt power upon the bankruptcy courts without explicitly restricting it. If Congress might confer such power on one occasion, it does not seem to us illogical that it might confer the power on another, and, in all events, the contempt power conferred on the bankruptcy courts by Congress is certainly subject to congressional regulation.

Burd next contends that if Congress granted contempt power to bankruptcy courts that the grant is unconstitutional. The argument is that the contempt power is so inherently judicial that it may not be delegated by Congress to a non-Article III court.[3] For this proposition, Burd depends upon *Northern Pipeline*, infra.

The Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), decided that 28 U.S.C. § 1471, because it permitted the bringing of a party *involuntarily* into a bankruptcy court to

---

2. Section 105(a) was amended in 1986 to add the following sentence to the language quoted in the body of the opinion: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process."

3. Courts deciding that a bankruptcy court's possession of civil contempt power is unconstitutional typically base their determination on their finding that contempt powers are essentially or inherently judicial. See *In re Industrial Tool Distributors, Inc.*, 55 B.R. 746, 751 (N.D.Ga.

1985); *In re Cox Cotton Co.*, 24 B.R. 930, 949 (E.D.Ark.1982), vacated on other grounds, 732 F.2d 619 (8th Cir.1984), cert. denied, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). Although the contempt power may be inherently judicial, we reject the notion that it is exclusively so. Congress has contempt power. *Jurney v. MacCracken*, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935). The tax court, an Article I court, has contempt power. 26 U.S.C. § 7456(c). A court-martial, an Article I court, has contempt power. 10 U.S.C. § 848. These two statutory grants of contempt power stand uncontested so far as we are advised.

decide a question of state law, was unconstitutional. See then Justice Rehnquist's concurrence, 458 U.S. at 89, 102 S.Ct. at 2881. The Court reasoned that only an Article III court could decide the rights of parties absent voluntary participation. The Court, however, did not construe the Constitution as prohibiting Congress from vesting sufficient authority in Article I bankruptcy courts for them to perform their essential function. Indeed, even the plurality opinion states that:

> when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created.

*Northern Pipeline*, 458 U.S. 50, 83, 102 S.Ct. 2858, 2877, 73 L.Ed.2d 598 (1982).

As we understand it, the part of the plurality opinion we have just quoted, while not discussed in then Justice Rehnquist's concurring opinion, was implicitly, even if not expressly, agreed to by Justice White's dissenting opinion. 458 U.S. 50, at p. 99, 102 S.Ct. 2858, at p. 2886. And, while the question that is presently before us was not before the Court in *Northern Pipeline*, the quoted statement from the plurality opinion, in which a majority of the court has agreed, is persuasive reasoning on a closely related subject, and we adopt that as the rule of decision here. In *Northern Pipeline*, of course, the plurality would have broadly denied the bankruptcy courts the right to decide questions of state law because they were not rights created by Congress. In our case, however, the right of a bankrupt or a debtor to have his affairs wound up in a court of bankruptcy is a federal right explicitly recognized by the Constitution (Art. 1, Sec. 8, cl. 4) as well as by Congress. So, the objections the plurality opinion in *Northern Pipeline* had

to deciding the question in that case are not present here.

▪ We believe that when a bankruptcy court uses civil contempt to enforce a proper order that such power under *Northern Pipeline* is also "incidental to Congress' power to define the right that it has created." See *Kellogg v. Chester*, 71 B.R. 36, 37–38 (Bankr.N.D.Ohio 1987). If Congress can constitutionally create legal presumptions, assign burdens of proof and prescribe legal remedies for Article I courts, it seems to follow that it can constitutionally grant them the power to enforce their lawful orders through civil contempt. Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it. Such a determination does not involve private rights under non-bankruptcy law and does not offend the Constitution, even under the plurality view in *Northern Pipeline*. It follows that we are of opinion the delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution as in violation of separation of powers.

▪ Burd finally challenges the sanctions the bankruptcy court ordered him to pay to the Walters. The court ordered Burd to pay the Walters for lost interest, travel and time reimbursements for trips necessary to enforce their rights, added attorneys' fees caused by Burd's contempt, and $1,000 for emotional distress. An award of the first three items is without error, but no authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none. That item of the award must be vacated.

The judgment of the district court is accordingly affirmed in all respects except that the item for emotional distress will be vacated.

We caution that we do not address any question of criminal contempt; neither do we express any opinion thereupon.

AFFIRMED IN PART VACATED IN PART.[4]

---

[4] An examination of the record does not disclose that FRAP 44 was complied with in that the parties did not give notice to the clerk of this court of the existence of a constitutional question and the clerk did not give notice to the Attorney General. There also may have been non-compliance with 28 U.S.C. § 2403 relating to the same subject. Such omission is not fatal, however. See *Jones v. City of Lubbock*, 727 F.2d 364 (5th Cir.1984); *Wallach v. Lieberman*, 366 F.2d 254 (2d Cir.1966).

Upon issuance of this opinion, a copy thereof will be certified by the clerk of this court to the Attorney General of the United States. In the event the Attorney General believes that intervention is required in order to protect the public interest, we will sympathetically entertain such a motion by the Attorney General, as well as his motion, if any, for rehearing of the case.

We think it not unreasonable that the Attorney General take any action he may so desire on or before 60 days from the date of this opinion, and to that end and effect the time for all parties to request a rehearing is extended until 60 days following the date of this opinion.