**In re James A. NORRIS, Jr., Debtor.**

**Bankruptcy No. 95BK–30087–M7.**

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

Aug. 14, 1995.

---

James A. Norris, pro se.

Bernard S. Johnson, Shreveport, LA, for petitioning creditors.

Stephen Katz, Bastrop, LA, for Trustee, Billy Vining.

## REASONS FOR DECISION ON MOTION FOR STAY AND ADDITIONAL RELIEF AND REPORT AND RECOMMENDATION WITH PROPOSED ORDER ON TRUSTEE'S MOTION FOR SANCTIONS AND CONTEMPT

HENLEY A. HUNTER, Chief Judge.

This matter came on for a hearing on July 21, 1995, on the Trustee's Motion for Sanctions and Civil Contempt. Prior to and at the hearing, Debtor sought other relief, including a stay of further proceedings. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), as it relates to the turnover of property of the estate. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to this Court, nor has the District Court done so on its own motion.

This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 on debtor's motion for a stay, and additional relief which is denied. This Court makes the following Report and Recommendation to the District Court concerning other relief sought by the debtor in accordance with Federal Rule of Bankruptcy Procedure 9033. Further, this Court submits a proposed Order of Civil Contempt on the Trustee's Motion for Sanctions and Civil Contempt

pursuant to Federal Rule of Bankruptcy Procedure 9020.

## 1. PROCEDURAL HISTORY

On June 13, 1995, Reasons for Decision were entered on the involuntary petition in favor of the petitioning creditors, Johnson & Placke, Don H. Johnson, and Allan L. Placke. *In re Norris*, 183 B.R. 437 (Bankr.W.D.La. 1995). Therein, the Court concluded that Norris did not incinerate approximately $490,000.00 to $500,000.00 in cash as he maintained at the trial on the involuntary petition and on the trustee's motion for turnover. It was found that Norris was still in possession and control of this money, the money was certainly property of the estate, and such property could benefit his creditors. He was directed to turnover the currency to the trustee immediately pursuant to 11 U.S.C. § 542. A separate conforming order granting the trustee's motion for turnover stated:

**IT IS ORDERED** that the Trustee's Motion for Turnover is hereby granted. Debtor, James A. Norris, Jr., is directed to turnover the sum of $490,000.00–$500,000.00 cash to the Interim Trustee, Mr. Billy Vining, forthwith.

Order, June 13, 1995.

Norris appealed from both the orders for relief and the turnover.

On June 28, 1995, the trustee filed the present motion for sanctions and contempt against Norris for failure to comply with the aforesaid order. The trustee alleges that Norris failed to turnover any funds since the date of the order.[1] An order dated June 26, 1995, was issued setting a hearing for July 21, 1995. On July 14, 1995, Norris filed an "Opposition to Motions for Sanctions and Civil Contempt and Motion for Stay." Therein, Norris asserts, *inter alia,* that the trustee's motion is based on mistaken findings and conclusions in that debtor is unable to turnover funds that no longer exist; that the bankruptcy court is without constitutional, statutory, or inherent jurisdiction, power, or authority to exercise contempt powers; that the contempt labeled as civil is actually

---

**1.** On May 9, 1995, the petitioning creditors also filed a Motion for Finding of Civil Contempt and

for Sanctions and a Memorandum in Support. No hearing has been noticed on this motion.

criminal contempt; and that the motion violates constitutional, statutory, and jurisprudential prohibitions against imprisonment for inability to pay debt. In this motion, debtor sought a stay of all proceedings until the appeal procedure is exhausted in the matter styled Johnson & Placke et al. vs. James A. Norris, Jr., No. 27476–CA, in the Second Circuit Court of Appeal for the State of Louisiana, State of Louisiana.

The hearing was called to order on July 21, 1995, at 9:30 a.m.; but Norris did not appear timely. The Court recessed briefly to allow counsel to the trustee time to attempt to locate him. Norris then appeared just before 10:00 a.m. Prior to the taking of evidence, he filed a "Motion for Jury Trial, Motion for Appointment of Counsel, and Motion for Appointment of Experts(s) for Further Analysis of Garbage Barrels Regarding Fire and Destruction of Funds and to Provide Expert Testimony and for Payment of Costs, Motion for Dismissal of Contempt Proceedings as Violative of Immunity Grant, Motion to Dismiss Trustee's Motion for Sanctions and Finding of Contempt for Failure to Comply with Rule 9020 and Because of Conflict of Interest, and Motion to Continue for Lack of Sufficient Time to Prepare." A "Memorandum in Support of Debtor's Opposition to Motion(s) for Sanctions and Civil Contempt and Motion for Stay" was likewise filed at the hearing. The Motion to Continue was denied for reasons orally assigned.

The sole testimony introduced at the hearing was by Norris. He admitted knowledge and service of the order, and that its terms were clear and unambiguous. He insisted he is not being recalcitrant in failing to comply, but lacks the ability to turn over the funds to the trustee steadfastly maintaining they no longer exist. He testified he is unable to borrow additional funds from his mother, "who doesn't have that kind of money." He stated that his cousin, who made him loans, described in the earlier reasons will not lend him more, "since it would not be repaid." No bank will lend him funds. In response to several specific questions about his intent to turn over the funds within a short period of time, Norris ultimately answered "no."

He further testified on his own behalf (in a typically rambling fashion), reiterating some of his earlier testimony at the trial on the merits. His observations included: (1) the suggestion that this Court had a "vengeful" attitude toward him, and "probably justifiably so;" (2) a claim that his bankruptcy counsel (who did not appear at the hearing on July 21, 1995) did not introduce additional evidence favorable to Norris at trial; (3) that he believes in the natural course of human events; (4) a firm belief that the state court will be reversed on appeal; (5) an assertion that if he had to invent a scheme to shield his assets, he would have thought up a "more believable one;" (6) that he "knows what is going on and what has been going on;" and (7) that he made a serious mistake in "getting involved with some people that are very evil." This Court will first address whether further proceedings should be stayed.

## 2. SHOULD FURTHER PROCEEDINGS BE STAYED?

■ Federal Rule of Bankruptcy Procedure 8005 provides that the bankruptcy judge may "suspend or order the continuation of other proceedings in the case under the code or make any appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Such a motion "must ordinarily be presented to the bankruptcy judge in the first instance."

■ The test for a stay pending appeal in the Fifth Circuit involves four factors. *United States v. Baylor Univ. Medical Ctr.*, 711 F.2d 38 (5th Cir.1983). *See also: Reading & Bates v. Musslewhite*, 14 F.3d 271 (5th Cir. 1994). They are:

(1) Whether the movant has made a showing of likelihood of success on the merits.

(2) Whether the movant has made a showing of irreparable injury if the stay is not granted.

(3) Whether the granting of the stay would substantially harm the other parties.

(4) Whether the granting of the stay would serve the public interest.

At the outset, Norris seems to have overlooked the distinction between the matters on appeal. The bulk of his testimony and argument relates to his certainty that the state court judgment in favor of the petitioning creditors will be reversed. Norris filed a devolutive appeal from that judgment. He did not appeal suspensively. This is not the first occasion that Norris has sought to delay these proceedings pending the appeal of that judgment. The same relief was requested by a Motion to Dismiss filed on April 5, 1995. The automatic stay was lifted to permit the appeal to proceed, but enforcement of the judgment was prohibited pending further orders of this Court.

In its earlier ruling, *supra*, this Court rejected Norris' suggestion that these bankruptcy proceedings be suspended or that abstention was warranted. Those reasons are incorporated herein by reference. Therein, this Court specifically rejected Norris' contention that a dispute as to the validity of a judgment held by the petitioning creditors disqualified them from asserting that he was not generally paying his debts under 11 U.S.C. § 303(h). This Court also found that special circumstances existed amounting to fraud.

Norris has cited no case in his memorandum supporting his contention that he will prevail on the appeal on the involuntary petition and on the turnover order. In the original reasons, the reversal or modification of the judgment by the state appellate courts was unlikely to lead to a successful restructuring of his financial affairs. We observed: "[h]is affairs are in a state of complete chaos created by his own hand and resourceful mind." 183 B.R. at 462. Norris earlier opined he could pay the mortgages on his property from his income if the judgment was reversed. *Id.* at 458, n. 28. This court disagrees. It concludes that Norris has failed to meet the burden on the first factor. In another bankruptcy context, the sort of optimism projected by Norris regarding his financial dilemma has been characterized as "terminal euphoria." *Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986).

On the second factor, the possibility of imprisonment for failure to comply, Norris testified that this situation posed irreparable harm to him and his family. In the Fifth Circuit, it appears that incarceration constitutes irreparable harm. *Bates Petroleum Co. v. Musslewhite, supra.*

On the third test as to harm to the opponents, the original reasons for decision found that the petitioning creditors lacked adequate remedies under state law. On these facts, a stay pending appeal would prevent the trustee in bankruptcy from executing his duties in accordance with 11 U.S.C. § 704(1) and continue to frustrate the petitioning creditors. This Court has already found that special circumstances amounting to fraud exist. This case is distinguishable from *Musslewhite*. Although the litigation between Norris and his former law partners has been pending for several years, like the underlying suit in *Musslewhite*, the harm here is not to the original plaintiffs but to the new bankruptcy estate. That harm will continue to accrue as long as debtor fails to surrender his assets to the trustee.

On these facts, the third and fourth factors are closely intertwined. Assets listed in Norris' schedules total over $1.4 million. Although the Court previously rejected Norris' contention that he burned almost one-half million dollars, assuming, *arguendo*, that such act occurred, nothing in such conduct favors permitting Norris to remain in control of his other assets pending appeal. In *In re Duggan*, 133 B.R. 671 (Bkrtcy.D.Mass.1991), discussed *infra*, the Court observed that its "concern is that the Trustee's obligation to administer this estate not be frustrated and his authority not be flaunted." Persons found to have committed fraud should not be able to delay the consequences indefinitely. The Motion for Stay pending appeal is denied.

The next issue to address is the contempt issue. A pause to place this issue in its historical context is in order.

### 3. THE HISTORY OF THE BANKRUPTCY COURTS' CONTEMPT POWER

The subject of contempt power was first contemplated by the Bankruptcy Act of 1898.

Pub.L. No. 55–171, 30 Stat. 544 (codified at 11 U.S.C. § 1, *et seq.* (1898) (repealed 1978)). Initially § 41, entitled "Contempts Before Referees," defined contemptuous behavior to include a person's disobeyence of a process, order, or writ of the referee. Section 41 also stated that contempt committed before the referee had to be certified to the district court judge. Thus, it was clear that the referee in bankruptcy possessed minimal contempt power.

Pursuant to 28 U.S.C. § 2075, Congress authorized the Supreme Court to promulgate rules governing bankruptcy procedure. In 1973, the Supreme Court adopted the Rules of Bankruptcy Procedure, abrogating the earlier General Orders in Bankruptcy. These rules governed all practice and procedure under the Act. The rules also changed the title from "Referee in Bankruptcy" to "Bankruptcy Judge." Former rule 901(7). Moreover, for the first time, the rules expressly recognized the power of bankruptcy judges to cite and punish civil contempt pursuant to former F.R.B.P. 920 (repealed in 1983).

The former rule provided that a bankruptcy judge, without certification to the district court judge, could punish contemptuous behavior by imposing a fine of not more than $250.00. If imprisonment or a fine of greater than $250.00, the bankruptcy judge was required to certify the facts to the district court. Former F.R.B.P. 920(a)(4). According to the Advisory Committee Notes, the rule was merely a recognition of the inherent power of a court of competent jurisdiction to enforce its own orders and to punish for disobedience of a lawful order.

In passing the Bankruptcy Reform Act of 1978, Congress completely reconstructed the entire bankruptcy court system. As part of this far-reaching legislation, Congress created in each judicial district a court known as the United States Bankruptcy Court. 28 U.S.C. § 151(a). That court had original jurisdiction over matters arising under Title 11. 28 U.S.C. § 1471. Congress designated the same as "court[s] of the United States," with full powers as a court of equity, law, and admiralty. 28 U.S.C. § 451; 28 U.S.C. § 1481.

Although the Act did not expressly grant civil contempt power to the bankruptcy courts, such power could be construed or implied by reading §§ 105(a) and 1481 together. Congress expressly curtailed the criminal contempt power by stating that the bankruptcy court could not punish "criminal contempts not committed in the presence of the judge of the court or warranting a punishment of imprisonment." 28 U.S.C. § 1481. The $250.00 monetary limitation under former rule 920 was eliminated.

### 4. THE CONTEMPT POWER AFTER NORTHERN PIPELINE

In 1982, the Advisory Rules Committee submitted a final draft of the rules and procedure to the Supreme Court for consideration. This submission was shortly before the Supreme Court handed down its decision in the landmark case *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, (1982), which held that Congress' grant of general jurisdiction was an "unconstitutional delegation of article III powers to a non-article III court."

Notwithstanding its decision in *Northern Pipeline,* the Court approved the final draft of the rules submitted in 1982 and transmitted them to Congress for approval in 1983. These rules, which govern procedure and practice of all cases filed under Title 11, became effective on August 1, 1983. F.R.B.P. 9020, as originally promulgated in 1983, was expressly based on 28 U.S.C. § 1481 and F.R.B.P. 920 and set forth procedures for a bankruptcy judge to summarily punish criminal contempt committed in the judge's presence. This revised rule, entitled "Criminal Contempt Proceeding," stated that any other criminal contempt could be sanctioned only after notice and a hearing. Also, the rule allowed a summary judgment disposition of criminal contempt committed in the presence of a bankruptcy judge. In addition, subsection (2) authorized the bankruptcy judge to punish one for criminal contempt but only after notice and a hearing when not committed in the presence of the judge. Lastly, subsection (3) required the certification of facts to the district court in the event

the punishment was imprisonment which was not within the powers of a bankruptcy judge by virtue of a specific limitation imposed by 28 U.S.C. § 1481.

To address the Supreme Court's ruling in *Northern Pipeline,* Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98–353) (BAFJA). Under BAFJA, the Congress repealed the provision in 28 U.S.C. § 451 that made the bankruptcy court a "court of the United States." Ostensibly, Congress also repealed 28 U.S.C. § 1481, which conferred bankruptcy courts with a limited criminal contempt power.

Instead, bankruptcy courts were defined as "units" of the district court presided over by bankruptcy judges. Bankruptcy judges were deemed judicial officers of district courts. 28 U.S.C. §§ 151, 152(a)(1). Although original and exclusive jurisdiction over all proceedings arising in, arising under, or related to cases filed under Title 11 was vested initially in the district court, it may refer these matters to the bankruptcy court. 28 U.S.C. § 1334; 28 U.S.C. § 157(a).

This referred jurisdiction is severed into two types—core proceedings and non-core proceedings. 28 U.S.C. § 157(b)(2). Core proceedings may be fully adjudicated by the bankruptcy court and are subject only to appellate review by the district court. 28 U.S.C. § 157(b)(1). In non-core matters, the bankruptcy court may hear the matter, but must submit proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(c)(1). The bankruptcy court may, however, fully adjudicate non-core proceedings with the consent of the parties. 28 U.S.C. § 157(c)(2). Thus, the judgment from such a proceeding will then be subject only to appellate review by the district court. *Id.* The statute further provides that any matter, core or non-core, may be withdrawn from the bankruptcy court to the district court. 28 U.S.C. § 157(d).

In summary, in enacting BAFJA, Congress rescinded the statutory underpinnings for a perceived broad grant of civil contempt power to the bankruptcy judges. However, the bankruptcy court was still able to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Furthermore, since the district court retained the powers of a court of equity, law, and admiralty, such powers could arguably be referred to the bankruptcy court, as a unit of the district court.

## 5. FEDERAL RULE OF BANKRUPTCY PROCEDURE 9020

In 1987, F.R.B.P. 9020 was amended to provide a procedural mechanism for bankruptcy judges to make determinations of contempt. The 1987 Advisory Committee note to rule 9020, however, asserted that bankruptcy judges may not have the power to punish for contempt.

This rule states:

(a) **Contempt Committed in Presence of Bankruptcy Judge.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) **Other Contempt.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified at the hearing except with the consent of the person charged.

(c) **Service and Effective Date of Order; Review.** The clerk, shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and

shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(d). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) **Right to Jury Trial.** Nothing in this rule shall be construed to impair the right to a jury trial where it otherwise exists.

F.R.B.P. 9020.

## 6. UNSETTLED ISSUES

█ Notwithstanding the *Northern Pipeline* decision, the 1984 BAFJA amendments, and the numerous rule changes, the contempt powers of the bankruptcy courts are the subject of dispute. This Court is scarcely unmindful of these unsettled issues in the jurisprudence. In the Fifth Circuit case of *In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990), the Court held that bankruptcy courts do not have inherent criminal contempt powers, at least with respect to the criminal contempt committed in (or near) their presence. This Court is bound by the Circuit's holding.

█ The power of bankruptcy courts to issue *civil* contempt sanctions has not been expressly considered by the Fifth Circuit to date. Although the holding in *In re Hipp* was limited to criminal contempt proceedings, the case discussed in *dicta* the civil contempt powers of the bankruptcy court. The Court stated:

Several lower courts have determined that civil contempt proceedings, though they do not fit within any of the explicit "core" proceedings listed, do fit within the section 157(b)(2)(0) catchall provision, which includes as being core "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." [citations omitted]. In effect, these courts have reasoned that civil contempt is itself core because it is inseparable from the obviously core proceedings that the civil contempt power helps to facilitate.

If bankruptcy civil contempt orders may arguably be core because their compliance coercive, remedial nature makes them inseparable from the underlying core proceedings, just as civil contempts generally have been viewed as part of the underlying case, then the same considerations may likewise arguably support an implicit section 157 grant to bankruptcy courts of civil contempt power.

*Id.* at 1517.

Only the Ninth Circuit has held that the bankruptcy court does not have civil contempt power. *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987). There, the Court rejected § 105 as a statutory source of civil contempt which may be exercised by the bankruptcy courts. In *Sequoia*, an involuntary Chapter 7 case brought by creditors of the corporation, the bankruptcy court named Ira Idell, a principal of the corporation, as the person responsible for completing the schedules and statement of financial affairs. Although Mr. Idell filed the schedules and the statement of affairs, they were substantially incomplete and of little value. The bankruptcy court cited him for contempt. After a procedural trek through the district court, the bankruptcy court ordered Idell incarcerated until he properly completed the documents. The district court reversed and the petitioning creditors appealed.

The Ninth Circuit declared that the bankruptcy court was without contempt authority. First, the Court noted that the bankruptcy court has no inherent authority to exercise the contempt power because it exists only in courts of article III standing. Second, the court determined that neither the jurisdictional statutes or the "catch-all" § 105 inferred that the bankruptcy court could impose contempt sanctions. *Id.* at 1290. In reaching this decision, the court indicated that authority to adjudicate core proceedings did not also include authority to enforce the decision. *Id.* at 1289.

The Ninth Circuit stated:

the broad, general language of section 105(a) is not a surrogate for the specific grants of limited contempt authority re-

pealed by the 1984 Amendments. We find it doubtful that Congress would have vested the bankruptcy court, through section 105, with a broader power of contempt than that of the article III courts that refer and review the bankruptcy courts' decisions or that of other similarly situated article I courts. We cannot divine from the language of section 105 the limitations Congress would surely have placed on the contempt power of bankruptcy judges if it had intended to confer such power.

*Id.* at 1290.

The First, Fourth, and Tenth Circuits refused to follow the Ninth Circuit's reasoning. The Fourth Circuit was the first to reject the Ninth Circuit's view by its holding in *In re Walters,* 868 F.2d 665 (4th Cir. 1989). The proceedings there involved an attorney's failure to repay funds to the debtors. The controversy arose in the fee application process. The Fourth Circuit found authority for the bankruptcy court to exercise the contempt power under § 105(a) as incidental to the authority to adjudicate core proceedings. The court disagreed with *Sequoia's* conclusion that § 105(a) was not an unlimited source of authority. Instead, it found that "plain meaning" should be given to the language of the statute. Since the bankruptcy court was an article I court, the Fourth Circuit suggested that both core proceedings and contempt actions may be matters involving public rights. Accordingly, the court appeared to reject the contention that the contempt power is an inherently judicial prerogative which may be exercised only by an article III court.

In addition, the court held that such power did not violate the *Northern Pipeline* rationale regarding the separation of powers stating in part that:

> [i]f Congress can constitutionally create legal presumptions, assign burdens of proof and prescribe legal remedies for Article I courts, it seems to follow that it can

constitutionally grant them the power to enforce their lawful orders through civil contempt.

*In re Walters,* 868 F.2d at 670.

The Tenth Circuit followed with *In re Skinner,* 917 F.2d 444 (10th Cir.1990).[2] That Court agreed with the conclusion in *Sequoia* that a bankruptcy court has no inherent contempt power. However, the court rejected *Sequoia's* conclusions that § 105(a) constituted adequate authority to exercise contempt power. In contrast, the court employed rules of statutory interpretation utilizing the plain and ordinary meaning of the wording. Since contempt proceedings arising out of core proceedings are themselves core matters, a bankruptcy court may adjudicate them pursuant to § 105(a) subject only to appellate review. *Id.* at 447. Discussing the constitutionality of this procedure, the Tenth Circuit held that bankruptcy proceedings are public rights capable of adjudication by a non-article III court, and the district court is available to give *de novo* review. Thus, the court concluded that the delegation of contempt powers to the bankruptcy court does not violate Article III of the Constitution.

Finally, the First Circuit then followed the *Skinner and Walters* line of reasoning and allowed bankruptcy courts to order civil contempt in its holding in *In re Power Recovery Systems, Inc.,* 950 F.2d 798 (1st Cir.1991), succinctly observing "[i]t is well-settled law that bankruptcy courts are vested with contempt power". *Id.* There, debtor sought to compel enforcement of the terms of a sale against the successful bidder; who had not removed the property from the debtor's business premises as the order approving the sale required. The holding, authored by a Senior Circuit Judge of the Fifth Circuit, sitting by assignment, upheld the contempt and sanction order.

No review of circuit level holdings would be complete without mention of the Eighth Circuit's holding in *In re Ragar,* 3 F.3d 1174

**2.** Uniform District Court Rule 22.01M & W, incorporated into Local Bankruptcy Rule 1.2 referred to the bankruptcy judges of this district all cases under Title 11 or arising in or related to cases under Title 11. The referral contains no prohibition on the power of bankruptcy judges to

punish contempt by imprisonment. In *Skinner,* 917 F.2d at 444, n. 4, however, the referral from district court expressly excluded the power to punish a contempt, whether criminal or civil, by imprisonment.

(8th Cir.1993). The bankruptcy court held that an attorney who continued to represent a Chapter 13 Debtor following a disqualification order was in criminal contempt and a fine was assessed. The resulting order provided that it would become effective as a final order ten days after service on the recalcitrant counsel unless, within such period, objections were filed and served in accordance with F.R.B.P. 9020. In that event, the order would be subject to review by the district court in accordance with F.R.B.P. 9033. Objections were filed. The district court reviewed and adopted the bankruptcy court's proposed findings. An appeal followed to the Eighth Circuit. One argument raised by the appellant, in reliance on *Hipp* and *Sequoia*, was that bankruptcy courts have no criminal contempt power. The appellees, of course, relied on *Skinner* and *Walters*.

The Eighth Circuit observed that in its case, the bankruptcy court "acted much as a magistrate judge would have on a matter lawfully assigned to him or her for a report and recommendation under 28 U.S.C. § 636." Ultimately, the district court's order was affirmed, based on the procedural method utilized.[3]

### 7. *11 U.S.C. § 105*

An examination of § 105 is necessary to an understanding of the issues. As originally enacted in 1978, § 105(a) provided:

> The Bankruptcy Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

In 1986, Congress again amended § 105(a) to read as follows:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 (BAFJA) (Pub.L. No. 99–554).

One early district court opinion, (even before the 1986 amendment), held that bankruptcy judges have the power to enter dispositive judgments in civil contempt matters. *In re Better Homes of Virginia, Inc.*, 52 B.R. 426 (E.D.Va.1985), *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986). The bankruptcy court awarded damages, punitive damages, attorney fees, and imposed a fine upon the contemnor. Affirming except as to the fine, which it found to be criminal in nature, the court relied upon § 105, and its belief that civil contempt is a core matter.

Some decisions focus on whether the contempt issues arose in a core matter under 28 U.S.C. § 157(b)(2). *Skinner* summed up the matter succinctly: "[c]ivil contempt proceedings arising out of core matters are themselves core matters." 917 F.2d at 448. *See also In re Babbidge*, 175 B.R. 708 (Bankr. W.D.Mo.1994) ("[I]n a core proceeding it [the bankruptcy court] has statutory jurisdiction to hear and determine a request for civil contempt emanating from . . . one of its orders."); *In re Haddad*, 68 B.R. 944 (Bankr. D.Mass.1987). ("The referral of jurisdiction to adjudicate core proceedings includes the jurisdiction to adjudicate civil contempt arising within the core proceedings.")

In *Kellogg v. Chester*, 71 B.R. 36 (N.D.Tex. 1987) the district court held (prior to the effective date of Rule 9020) that civil contempt was itself a core matter. The Court observed "[t]his Court is of the opinion that civil contempt invoked for the purpose of enforcing a proper bankruptcy court order is of the same genus as the other matters described by the Supreme Court [in *Northern Pipeline* ] as 'incidental' to rights created by Congress." The *Kellogg* Court expressly disagreed with the contrary holding in *Continental Air Lines, Inc., v. Hillblom*, 61 B.R. 758 (S.D.Tex.1986). At least one court has held that the nature of the proceeding is

---

**3.** The *Ragar* opinion states at p. 1177 that the bankruptcy court in *Sequoia* had entered an order of criminal contempt. However, the Ninth Circuit's holding in *Sequoia* describes the order under review as a civil contempt order.

irrelevant to the constitutional issue; in such situations, the bankruptcy court should certify the matter to the district court. *In re Industrial Tool Distributors, Inc.,* 55 B.R. 746 (N.D.Ga.1985).

## 8. CIVIL CONTEMPT DISTINGUISHED FROM CRIMINAL CONTEMPT

▮ The purpose of civil contempt is to (1) coerce or compel compliance with a court order or (2) compensate an aggrieved party for violation of a court order. *E.g., In re Skinner,* 917 F.2d at 444; *Hubbard v. Fleet Mortgage Co.,* 810 F.2d at 781, (*citing United States v. United Mine Workers,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 700–02, 91 L.Ed. 884 (1947)). The sanctions for civil contempt must not be punitive. *In re Magwood,* 785 F.2d 1077 (D.C.Cir.1986).

▮ In contrast, criminal contempt serves to vindicate the dignity of the court. *E.G. In re Hipp,* 895 F.2d at 1510; *In re Better Homes of Virginia, Inc.,* 52 B.R. at 430, *aff'd on other grounds,* 804 F.2d 289 (4th Cir. 1986). *See also* BLACK'S LAW DICTIONARY 319 (6th ed.1991).

## 9. REQUIREMENTS FOR CONTEMPT

▮ "In order for a party to be cited for civil contempt, a court must find that the party violated a specific and definite court order and that party had knowledge of the order sufficient to put him on notice of the proscribed conducted [sic]." *In re Skinner,* 90 B.R. 470 (D.Utah 1988); *aff'd,* 917 F.2d 444 (10th Cir.1990) (citation omitted). In addition, for civil contempt to be an appropriate sanction, the contemnor must have violated a lawful order of the court. *In re Walters,* 868 F.2d at 670; *CFTC v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th Cir.1992). Intent is not an element of civil contempt.

▮ The moving party must prove civil contempt by clear and convincing evidence. *In re Spanish River,* 155 B.R. 249 (Bank. S.D.Fla.1993). Counsel to the trustee cites the holding in *CFTC v. Wellington Precious Metals, Inc., supra,* in his supporting memorandum. In that matter, Daniel Weiss was tried in a civil proceeding and was ordered to disgorge $2.8 million obtained in a fraudulent scheme. Having made no payments, he was found in contempt and ultimately incarcerated. He sought release from the district court, claiming inability to comply and the motion was denied. On appeal, the Eleventh Circuit affirmed. The Court observed that the burden of proving contempt rests on the party seeking such relief to prove by clear and convincing evidence that the respondent violated an outstanding order. Then, the burden shifts to the respondent, who may defend on the basis of inability to comply. At this stage, the respondent must "go beyond a mere assertion of inability," *Id.* at 1529. *Citing United States v. Hayes,* 722 F.2d 723 (11th Cir.1984). Only when the contemnor has made a sufficient showing does the burden revert to the party seeking to show contempt.

## 10. POWER OF INCARCERATION

▮ The bankruptcy court has the power to impose incarceration as a sanction for civil contempt when there is a history of non-compliance with Court orders and non-monetary sanctions would be inadequate. *In re Duggan,* 133 B.R. at 673–74; *In re Maxair Aircraft Corp.,* 148 B.R. 353 (M.D.Ga. 1992). Even though civil contempt is coercive in nature and is often fashioned in a way that is contingent on compliance with the order, the contemnor should be able to comply with the order to avoid such action.

▮ Compliance with a contempt order is often accomplished by a "purgation provision, whereby a civil contemnor may purge himself of contempt at any time by compliance." *In re McLean Industries, Inc.,* 68 B.R. 690 (Bkrtcy.S.D.N.Y.1986). This purging mechanism distinguishes civil from criminal contempt. In contrast to the fixed term of imprisonment that is characteristic of criminal contempt cases, the contemnor determines generally how long the incarceration will last. If the contemnor makes a clear showing of inability to comply with the order, then, imprisonment cannot continue. The intent of incarceration is remedial, and not penal, in nature. The contemnor is said to "possess the keys to the jailhouse." *In re Spanish River Plaza Realty Co., Ltd.,* 155

B.R. at 254 (*quoting Shillitani v. U.S.,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)). The Court in *CFTC v. Wellington* also noted that time spent in prison did not in and of itself establish the inability to comply. This issue is discussed further, *infra.*

Bankruptcy Courts have imposed contempt sanctions in the context of turnover orders with the trustee as the successful movant. At least one such holding was upheld by the district court. *In re Sun–Island Realty, Inc.,* 177 B.R. 391 (S.D.Fla.1994).

### 11. DAMAGES FOR CONTEMPT

In addition, the Court can impose a fine payable to the complainant in compensation for damages sustained as a result of the contemptuous conduct. *E.g., In re Babbidge,* 175 B.R. at 722, (*citing United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947)). The damages may also include attorney fees and costs. *Id. (citing Perry v. O'Donnell,* 759 F.2d 702, 705 (9th Cir.1985)). The damage award is designed to compensate the party for losses sustained by the refusal to comply with the order. To date, the trustee has not sought additional relief. Therefore, this Court will pretermit consideration of any additional damage award pending further notice and a hearing.

### 12. ANALYSIS

This Court emphasizes that this matter is a civil contempt proceeding. The trustee has proven by clear and convincing evidence that Norris does not intend to comply with the order dated June 13, 1995. Procedural requirements of rule 9020(b) have been satisfied. On June 28, 1995, the trustee filed a Motion for Sanctions and Civil Contempt alleging that Norris failed to turnover any funds since the date of the order. A Notice of Hearing was also filed stating in part:

NOTICE IS HEREBY GIVEN that Billy R. Vining, Interim Trustee, has filed a Motion for Sanctions And Civil Contempt and Memorandum In Support. A complete copy is attached.

NOTICE IS FURTHER GIVEN that a hearing has been scheduled to consider the Motion on the 21st day of July, 1995, at the hour of 9:30 o'clock a.m. in the Bankruptcy Courtroom, Federal Building, 300 Jackson Street, *Alexandria,* Louisiana.

The notice clearly indicates the time and place of the hearing, as well as notice that civil contempt sanctions would be sought by the trustee. Also, the Memorandum in Support, incorporated by reference into the Notice, states the essential facts constituting the contempt charged against Norris. The Court issued an order fixing a hearing.

Unquestionably, by his own admission, Norris was aware of the hearing, the charges, and had reasonable time to prepare a defense. He certainly had ample time to turnover the money, but has failed to do so. Norris, however, asserts that the present procedure is flawed, relying on the Fifth Circuit decision in *Hipp.* He asserts that the trustee has a conflict and that the motion is not being prosecuted by a proper party under rule 9020. Support for Norris' contention in the circuit holdings other than *Hipp* is conspicuously lacking. Although it is true that the successful appellees in *Skinner, Walters, and Power Recovery* were not trustees, none were prosecuted on the "court's own initiative," by the U.S. Attorney, or by specially court-appointed counsel. In *Ragar,* the standing chapter 13 Trustee sought to disqualify counsel. The Court then issued an order to show cause.

*Ragar* is supportive of the procedure followed in the instant case. Here, Mr. Vining, the Trustee, filed the motion for contempt and this Court set a hearing. The argument raised by Norris was specifically rejected in *In re Duggan, supra,* where the trustee sought a contempt order for debtor's failure to comply with a turnover order. After reviewing the extant holdings at the circuit level, (*In re Sequoia, Skinner, and Walters*), the Court in *Duggan* determined that "Bankruptcy Rule 9020 is not determinative." Essentially, this conclusion was predicated on the determination that a turnover matter was core in nature; and that the review process contemplated by rule 9020 was for non-core proceedings as set forth in rule 9033.

### 13. OTHER DEFENSES RAISED BY NORRIS

■ Norris claims a myriad of additional objections to these proceedings. He claims he is entitled to a jury trial. *Sun–Island Realty, supra,* is also dispositive of this contention. There, the principal of the debtor/corporation, Hemmerle, contended that he was entitled to a jury trial. The Court observed:

Hemmerle contends that he was denied his constitutional right to a jury trial on the contempt charges. While there is a Sixth Amendment right to a jury trial in certain contempt cases, there is no such right in civil contempt cases. *See United States v. Rylander,* 714 F.2d 996, 998, 1004 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); *see also, Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) absent an express statute, there is no right to a jury trial in civil contempt proceedings.

The Court noted that rule 9020(d) does not change this result since the right did not "otherwise exist." In *Sun–Island* Hemmerle also contended that the fine of $250,000 and incarceration were so harsh that it constituted criminal contempt. The district court disagreed, noting that the order provided a "grace period" wherein he could remove the civil contempt and avoid the fine and incarceration.[4]

■ Norris' contention that he is entitled to appointment of counsel as an indigent is also without merit. There is a thorough discussion of the right to counsel in bankruptcy matters in *In re Fitzgerald,* 167 B.R. 689 (Bkrtcy.N.D.Ga.1994). Although 28 U.S.C. § 1915(d) may authorize the appointment of counsel for an indigent, that statute refers to § 1915(a), which applies to courts of the United States. *Citing United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the *Fitzgerald* Court found that the *in forma pauperis* provisions of § 1915(a) were not available in bankruptcy

cases, and § 1915(d) was "probably not applicable in bankruptcy cases," since bankruptcy courts are not expressly designated courts of the United States.

The holding in *Fitzgerald* does acknowledge that an indigent may have rights to appointed counsel if he may be deprived of his physical liberty if he loses. *See also In re Winslow,* 131 B.R. 171 (D.Colo.1991). Nothing, however, in the instant case, supports the claim of Norris' indigency. These findings have already noted that the schedules list extensive assets which include "Estimated Contingency Fees" due in his law practice totalling $101,064.33, [Attachment 9 to Schedule B] and IRA accounts for Debtor and his Spouse in the respective amounts of $40,329.68 and $37,546.88, and $31,370.26 in the District Attorney's Retirement System [Attachment 9 to Schedule B]. Norris has claimed that these and other items are exempt under Louisiana law. [See Schedule C]. If this is correct, nothing precludes Norris from expending these sums in his defense.

Moreover, as of the date of the hearing on the contempt issues, Norris was represented by an experienced bankruptcy attorney, Mr. John C. Anderson. Anderson appeared on behalf of debtor at the trial on the merits on the involuntary petition and for turnover, but did not appear at the hearing on the contempt issue. Norris, himself an attorney, professes a lack of experience in bankruptcy matters. Although Norris now claims some degree of dissatisfaction with Anderson's representation, (arguing that he did not offer certain photographic evidence which, Norris asserts, might have established his claim that there was a fire), Mr. Anderson has not sought to withdraw as debtor's counsel. Thus, Norris is not entitled to the appointment of counsel. *In re Gherman,* 101 B.R. 369 (Bkrtcy.S.D.Fla.1989).

Norris also seeks to have additional expert witnesses appointed and for expert costs for further examination of the garbage barrels. This request is nothing more than a late motion for reconsideration. F.R.B.P. 9023.

---

4. 28 U.S.C. § 157(e) permits bankruptcy judges to conduct jury trials under certain circumstances. Although this section was added by the 1994 amendments to the Code, it would not appear to change the result here, since it only pertains where the "right to a jury trial applies in a proceeding that may be heard under that section by a bankruptcy judge."

Norris had ample opportunity prior to trial to prepare. This Court entered an Order Scheduling Trial on Involuntary Petition dated April 6, 1995. That order required counsel for all parties to participate in a pre-trial meeting to examine all exhibits and documents proposed to be used at trial and to furnish opposing counsel the names and addresses of all witnesses. Norris did not furnish opposing counsel any report of his expert's investigation. In fact, the petitioning creditors strenuously objected to his expert testifying and the objection was overruled.

■ Norris also objects that these contempt proceedings are violative of his immunity grant. Pursuant to an order of the District Court in this matter dated March 15, 1995, Norris was directed to testify in this matter notwithstanding his claim of possible self-incrimination. That order provided that no testimony or other information "shall be used against the witness in any criminal case except the prosecution for perjury, giving a false statement, or otherwise failing to comply with this order." District Court Order dated March 15, 1995. These reasons have already noted that this is not a criminal proceeding.

This Court has made express findings that Norris fabricated the tale that he incinerated the funds which are the subject of the turnover order. Immunity was granted pursuant to 18 U.S.C. § 6001 *et seq.* Both the statute and the order of the District Court expressly exclude prosecution for perjury. In *CFTC v. Wellington, supra,* the Court, in rejecting contemnor's claim that incarceration should cease, concluded:

> While each passing month of incarceration may strengthen Weiss's claim of inability, *see United States ex rel. Thom v. Jenkins,* 760 F.2d 736, 740 (7th Cir.1985) "[I]t can be assumed that at a certain point any man will come to value his liberty more than [the amount of money the order requires him to pay] and the pride lost in admitting that he has lied.", many months or perhaps even several years may pass before it become necessary to conclude that incarcera-

tion will no longer serve the purpose of the civil contempt order.

950 F.2d at 1531.

■ This Court steadfastly believes that incarceration is the only appropriate sanction to influence Norris to turn over the money. There is no reason to expect that Norris would comply with a monetary sanction. Norris can avoid imprisonment altogether by turning over $490,000 to $500,000 to the trustee immediately as the order dictates.

## CONCLUSION

This debtor seeks relief in the form of a stay and for appointment of experts and costs. Those motions are within the core jurisdiction of the bankruptcy court to enter dispositive orders. This Court also concludes that the contempt issue here arises in the context of matters which are core in nature pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O), and, thus, is likewise a core proceeding. Nonetheless, given the unsettled jurisprudence in this area, this Court submits the contempt and other matters to the District Court as a Report and Recommendation for review in accordance with Federal Rule 9033 and as a proposed Order of Civil Contempt in accordance with F.R.B.P. 9020.

**THEREFORE,**

**I.** A separate and conforming order will enter denying the Motion for Stay and for the Appointment of Experts and Costs.

**II.** This Court **REPORTS AND REC-OMMENDS** to the District Court that Debtor's Motion for a Jury Trial, Motion for Appointment of Counsel, for Dismissal as Violative of Immunity Grant, and for Failure to Comply with Rule 9020 and other relief be **denied; and**

**III.** An **ORDER OF CIVIL CON-TEMPT** issue herein in accordance with **F.R.B.P. 9020.** This Order is intended to be a final order and shall have the same force and effect as an Order of the District Court unless written objections are filed and served within **ten (10) days** in the manner provided by F.R.B.P. 9033(b). In the event such objections are filed within that period of time, the order shall not become effective until

after a review of the report and recommendation by the District Court. The terms and conditions of the proposed Order are as follows:

   A. **James A. Norris, Jr.,** is declared in contempt of the Order of the Bankruptcy Court dated June 13, 1995, reading in pertinent part as follows:

   **IT IS ORDERED** that the Trustee's Motion for Turnover is hereby granted. Debtor, James A. Norris, Jr., is directed to turnover the sum of $490,000.00–$500,000.00 cash to the Interim Trustee, Mr. Billy Vining, forthwith.

   B. **James A. Norris, Jr.,** is allowed ten (10) days from the entry of this order to purge himself of the contempt by complying with the Order dated June 13, 1995, by turning over to the Trustee, Mr. Billy Vining, the sum of $490,000.00–$500,000.00 cash.

   C. If he fails to do so, he shall voluntarily surrender to the United States Marshall Service at the Federal Courthouse in Monroe, Louisiana on the tenth day.

   D. If he fails to voluntarily surrender, a warrant for his arrest shall issue on the eleventh day.

   E. **James A. Norris, Jr.,** may otherwise purge himself of the contempt as determined by further orders of this Court or of the United States District Court.

   F. In carrying out this Order, the United States Marshals and other officers of the United States are authorized to use whatever force is reasonably necessary in order to arrest and restrain James A. **Norris, Jr.,** and may do so at any hour of the day or night and on any day of the week.

   **IV.** The Clerk of the Bankruptcy Court is directed to serve forthwith a copy of this Report and Recommendation and proposed Order for Contempt on **James A. Norris, Jr.,** in accordance with F.R.B.P. 9033(a) and 9020(c).