**In re TERREBONNE FUEL & LUBE, INC.**

**Civil Action No. 94–2368.**

United States District Court, E.D. Louisiana.

April 22, 1996.

James G. Burke, Jr., Robert D. Hoffman, Jr., Burke & Mayer, New Orleans, LA, for appellant.

C. Berwick Duval, II, Duval, Funderburk, Sundbery & Lovell, Houma, LA, for appellee.

McNAMARA, District Judge.

Before the court is Placid Refining Company's appeal of the Bankruptcy Court's order finding it in contempt. Appellee, Terrebonne Fuel & Lube, Inc., has filed a reply memorandum and a cross-appeal. This matter is before the court on briefs without oral argument.

### Background

On or about April 28, 1985, Terrebonne Fuel and Lube, Inc. ("Terrebonne"), a wholesale fuel distributor, and Placid Refining Company, ("Placid"), entered into a Diesel Fuel Purchase Agreement (the "Agreement") whereby for a term of one (1) year Placid was to sell to Terrebonne up to 50,000 barrels of diesel fuel per month on a credit basis

with payments to be made within sixty-five (65) days of shipment. *See* Placid's Original Brief at p. 9.

Terrebonne secured this credit purchase by three separate security agreements consisting of: (1) a chattel mortgage on Terrebonne's inventory; (2) assignment of Terrebonne's accounts receivable; and (3) signatory rights on Terrebonne's bank account (collectively, the "Collateral"). *Id.* According to Placid, in order for Terrebonne to purchase the diesel, Terrebonne had to maintain and certify that 85% of the total certified value of its Collateral exceeded the sum of its existing debt to Placid plus the price of the diesel to be purchased. *Id.* These certifications were represented by borrowing base reports submitted by Terrebonne on a weekly basis to Placid. *Id.*

Placid alleges that despite the fact that Terrebonne was consistently in arrears, it continued to supply it with the requested amount of diesel fuel based on Terrebonne's certification of excess positive collateral. *Id.* According to Placid, at the expiration of the agreement, Terrebonne owed it over $1 million of which $500,000 was past due. *Id.* at pp. 9–10. Placid maintains that when it sought to exercise the lien against Terrebonne's bank account, Terrebonne sought protection under Chapter 11. *Id.* at p. 10.

Terrebonne did in fact file for Chapter 11 protection on May 1, 1986. Terrebonne submitted a plan of reorganization which provided for payment of Placid's debt over five (5) years to which Placid objected. Despite Placid's objection, the plan of reorganization was confirmed on April 16, 1987. On April 24, 1987, three days before the order of confirmation became final, Terrebonne filed a complaint for equitable subordination against Placid, alleging that Placid had forced it into bankruptcy by failing to deliver the contractually obligated quantities of diesel as stated in the Agreement. Placid moved to dismiss this complaint on grounds of *res judicata.*

On June 29, 1989, the bankruptcy court dismissed Terrebonne's complaint holding that it failed to state a claim for equitable subordination and because the matters raised therein were not "core" proceedings, the bankruptcy court declined to exercise jurisdiction over what it viewed as breach of contract claims arising under state law. No appeal was taken from this ruling.

Following the dismissal by the bankruptcy court, Terrebonne brought its action in Louisiana state court. Placid filed an exception arguing that the order of confirmation was *res judicata* as to Terrebonne's claim, a claim that had not been listed as an asset in Terrebonne's bankruptcy schedules nor disclosed in the plan of reorganization. Placid then sought leave to file a reconventional demand in the state court action alleging that Terrebonne had over-inflated its excess positive collateral in the borrowing base reports from a negative amount to a positive amount. Placid sought damages for expenses and attorney's fees incurred in the bankruptcy proceeding, for loss of business opportunity with respect to, and/or loss of use of, the funds owed to Placid by Terrebonne, and expenses and attorney's fees incurred in defending itself against the state law claims.

Terrebonne objected to Placid's filing the reconventional demand on numerous grounds, including that the order of confirmation precluded any suits based on pre-confirmation actions, and thus, it moved to strike any reference to the false borrowing reports. Placid's request for leave was granted and its reconventional demand was allowed to proceed by the state court.

In response to the reconventional demand, Terrebonne went to the bankruptcy court on February 16, 1993, to seek to hold Placid in contempt for seeking pre-confirmation damages in state court. Placid, on the other hand, asked the bankruptcy court to order Terrebonne to dismiss its state court claims on the grounds of *res judicata.*

On March 22, 1993, the bankruptcy court signed its Order holding Placid in contempt and ordered Terrebonne to submit evidence of the cost and expense it incurred in the matter. This Order was entered into the record on April 2, 1993. The bankruptcy court stated in its Order that after submission of the information by Terrebonne, it would designate the amount of sanctions due and payable by Placid to Terrebonne. In

what it alleges that it believed to be compliance with the bankruptcy court's contempt order, Placid moved the state court for leave on March 26, 1993 to strike all references to pre-confirmation *damages* from its state court reconventional demand and it informed the state court that the only *damages* that it sought were those that arose post-confirmation.

With regard to Placid's request to have the bankruptcy court order Terrebonne to dismiss its state court action, the bankruptcy court concluded that the matter was neither a "core" proceeding nor "related to" the bankruptcy case and at that point, three years after the adversary proceeding had been dismissed and with the plan substantially consummated, it lacked jurisdiction over the controversy. Although Placid filed a notice of appeal of this ruling on March 24, 1993, it did not obtain a stay of the bankruptcy court's order pending appeal.[1]

The state court matter proceeded to a trial on the merits and on March 29, 1993, a judgment in favor of Terrebonne was returned in the amount of $500,000. Terrebonne then filed a cross-appeal to Placid's appeal to the federal district court regarding the bankruptcy court's ruling on its *res judicata* argument to increase the sanctions against Placid and to have Placid's appeal declared moot because the issues from which it appealed were decided by the state court because, on March 29, 1993, while the appeal was pending before the federal district court, the state court dismissed with prejudice Placid's exception of *res judicata*. On May 5, 1993, Placid filed a suspensive appeal to the state court proceeding.

On July 22, 1993, Judge Wicker concluded that Placid's appeal must be dismissed because federal courts were required to give full faith and credit to the state court judgment which dismissed with prejudice the exception of *res judicata* that Placid had raised in the state court proceedings. Judge Wicker also dismissed Terrebonne's cross-appeal as premature due to the fact that the amount of sanctions against Placid had not yet been set by the bankruptcy court.

In response to Placid's continued actions in the state court, namely pursuing a suspensive appeal of the *res judicata* issue, Terrebonne revisited the bankruptcy court on August 26, 1993 and filed a second motion to hold Placid in contempt for continued prosecution of what it denominated a claim to recover damages for pre-confirmation conduct. A hearing on the motion was held on January 7, 1994, and on June 2, 1994, the bankruptcy court entered its Order holding Placid in contempt and awarding Terrebonne $18,357.48 as sanctions against Placid.[2]

Placid appealed Judge Wicker's ruling to the Fifth Circuit which issued its opinion on April 4, 1994, affirming the district court's ruling. The Fifth Circuit concluded that although the parties had engaged in considerable analysis of the law of *res judicata* in Louisiana to resolve the dispute, the court believed that Placid's appeal was in reality an attack of the bankruptcy court's June 29, 1989 order. After considerable analysis of the prior proceedings, the Fifth Circuit concluded that Judge Wicker reached the correct result and that the state court litigation should be permitted to run its course.

As stated previously, on June 2, 1994, the bankruptcy court entered its Order holding Placid in contempt and awarded Terrebonne $18,357.48 as sanctions against Placid. On June 10, 1994, Placid filed a notice of appeal to vacate that ruling. Terrebonne has filed a cross-appeal to have the amount of the sanction increased. This is the matter presently before the court.

---

1. In her July 22, 1993 Order and Reasons, Judge Wicker noted that "[u]nder B.R. 8005, which governs motions for stay of a bankruptcy court order, the consequence of failing to obtain a stay is that the prevailing party may treat the judgment of the lower court as final notwithstanding that an appeal is pending." *See* Order and Reasons, Document No. 193.

2. The bankruptcy court's Memorandum Opinion (Document No. 216) did not specify the breakdown of this figure as that applying to the first contempt finding versus the second. However, the court did state that the amount awarded was that expended by Terrebonne related to the defense of Placid's reconventional demand which was the subject matter of both contempt proceedings.

### Analysis

To resolve this controversy, there are three issues that need to be addressed. First, the contempt proceedings must be classified as either civil or criminal. Second, the court must determine whether the bankruptcy court had the authority to conduct the contempt proceedings in this case. Finally, if the court concludes that the bankruptcy court did in fact have the authority to conduct the contempt proceedings, then the court must review the substantive issues raised by the parties.

### I. Classification of the contempt proceedings

■ Contempt proceedings are classified as either civil or criminal. "A contempt order or judgment is characterized as either civil or criminal depending upon its primary purpose." *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir.1990). If the purpose of the order is to punish the party whose conduct is in question or to vindicate the authority of the court, the order is viewed as criminal. *Id.* If, on the other hand, the purpose of the contempt order is to coerce compliance with a court order or to compensate another party for the contemnor's violation, the order is considered to be civil. *Id.*

■ While these definitions provide some guidance, the distinction between civil and criminal contempt is far from an exact science. Nevertheless, the court is convinced

that the contempt proceedings in this case were civil as the purpose of the contempt sanction was to compensate Terrebonne, the party in whose favor the law provides for the discharge injunction [3] that Placid was held in contempt for violating, for the costs and expenses it incurred in defending Placid's reconventional demand and suspensive appeal in the state court proceedings.

### II. Authority of the bankruptcy court to conduct civil contempt proceedings

■ While the Fifth Circuit has not reached this issue, the Fourth [4], Ninth [5] and Tenth [6] Circuits have all held that bankruptcy courts do have the power to conduct civil contempt proceedings and that the source of this power is statutory. These circuits identify 11 U.S.C. § 105(a) as the statutory source of this power.[7] Moreover, the Tenth Circuit concluded that it was not unconstitutional for Congress to grant such contempt power to bankruptcy courts "since the district courts retain the power of *de novo* review over the bankruptcy courts' findings of fact and conclusions of law in civil contempt proceedings." *See In re Skinner*, 917 F.2d 444, 450 (10th Cir.1990). The court noted that pursuant to Bankruptcy Rule 9020, if a timely objection is filed, the order will be reviewed by the district judge *de novo* as provided in Rule 9033(d) [8] which requires the bankruptcy judge to issue findings of fact and conclusions of law. *See id.* at n. 7.

3. *See* 11 U.S.C. § 1141.

4. *In re Walters*, 868 F.2d 665 (4th Cir.1989). In support of its ruling, the court in *Walters* noted that other Article I courts possess contempt power: (1) tax courts have contempt power pursuant to 26 U.S.C. § 7456(c); and (2) court-martials possess contempt power pursuant to 10 U.S.C. § 848. *Id.* at 669 n. 3.

5. *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir.1996). *See also* footnote 7, *infra.*

6. *In re Skinner*, 917 F.2d 444 (10th Cir.1990).

7. The Ninth Circuit stated that § 105(a) is implicit recognition by Congress that bankruptcy courts have the inherent power to sanction. *See In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir.1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

Although this case dealt with sanctions under B.R. 9011 (the counterpart to Fed.Rule Civ.Pro. 11), the court stated that the decision superseded its prior decision in *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281 (9th Cir.1987), wherein it held that bankruptcy courts have no power, inherent or statutory, to issue civil contempt orders. *Id.* at 284.

8. Bankruptcy Rule 9033(d) provides that

The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with recommendations.

Following the logic of these courts, the court concludes that bankruptcy courts have the power to conduct and punish civil contempts, even indirect contempts, and that the source of this authority is 11 U.S.C. § 105(a). Consequently, because the proceedings in this case were civil in nature, the bankruptcy court was acting within the realm of permissible power to issue civil contempt sanctions.

### III. Substantive issues raised by the parties

█ Now, turning to the substance of the appeal, Placid argues that it was denied due process when the bankruptcy court failed to follow the procedure required in Bankruptcy Rule 9020. This rule provides procedures for contempt proceedings in the bankruptcy court as follows:

(a) **Contempt committed in presence of bankruptcy judge.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) **Other Contempt.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that

judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) **Service and effective date of order; review.** The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10-day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(d)[9]. If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) **Right to jury trial.** Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

Placid argues that the bankruptcy court failed to follow the procedural and substantive due process requirements of Rule 9020 and instead "created a shortcut procedure of indictment than [sic] sentence." *See* Appellants Brief at p. 17. Specifically, Placid argues that: (1) the bankruptcy judge failed to give notice in writing stating the essential facts constituting the contempt charged[10]; (2) the bankruptcy court failed to specify whether the contempt was civil or criminal despite being requested to do so; (3) no separate counsel was appointed as required; (4) the bankruptcy court did not issue findings of fact and conclusions of law, which are also required to be served on the parties, and thus, Placid was denied the right to file written objections to these findings; (5) Placid was denied the right to adduce evidence in the form of testimony and to cross-examine witnesses, and if applicable, it was denied the right to a jury trial; and (6) because there are no findings of fact and conclusions of law, the district court cannot make a *de novo* review of the same.

---

9. Bankruptcy Rule 9033(d) provides that

The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive

further evidence, or recommit the matter to the bankruptcy judge with recommendations.

10. Placid argues that although Terrebonne filed a Rule to Show Cause, this is not the notice required by Rule 9020 and is "certainly not a notice given on the court's own initiative or by an attorney appointed by the court for that purpose." *See* Appellant's Brief at p. 17.

With regard to Placid's first argument, lack of notice, the record reveals that it had adequate notice of the contempt proceedings and filed responsive memoranda considered by the court at both proceedings. Terrebonne filed its first contempt motion on February 18, 1993, and the hearing was held on March 18, 1993 with the order of contempt being issued on March 22, 1993. Terrebonne filed its second contempt motion on August 25, 1993 and the hearing was not held until February 6, 1994, some six (6) months later. In fact, the record reveals that with regard to the second contempt hearing, both parties made numerous submissions and Placid issued requests for production and interrogatories and it even filed a motion to compel discovery. Thus, Placid was given adequate notice of the grounds for the contempt proceedings and on both occasions, it was given an opportunity to be heard.[11] *See International Union, UMWA v. Bagwell,* — U.S. —, —, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994) (Civil contempt sanctions may be imposed upon notice and an opportunity to be heard.)

■ Although Placid's claim that the bankruptcy court failed to designate the contempt proceedings as either criminal or civil is correct, it does not specify how it was prejudiced by the failure of the bankruptcy court to denominate the proceedings. Also, although the bankruptcy court did not explicitly appoint separate counsel, it implicitly did so by allowing Terrebonne to prosecute the contempt proceedings.

■ Placid also argues that it was prejudiced because the bankruptcy judge did not issue findings of fact and conclusions of law. The court notes, however, that the bankruptcy judge issued a Memorandum Opinion on June 2, 1994 (Document No. 216) wherein it outlined its findings and conclusions. Although this Memorandum Opinion was issued following the second contempt proceeding, both contempt proceedings governed the same subject matter and the Opinion issued by the bankruptcy judge adequately addressed the disposition of the first contempt proceeding as well as the second.

■ Finally, Placid alleges that it was denied due process because it was denied the right to adduce evidence in the form of testimony and to cross-examine witnesses, and if applicable, it was denied the right to a jury trial. The transcript of the second contempt proceeding in the bankruptcy record (Document No. 229) reveals that the matter was handled through arguments raised in briefs and oral argument of counsel and that neither side introduced evidence via testimony. Furthermore, because the contempt proceedings were civil, Placid was not entitled to a jury trial. *See id.* (Jury trial not required in civil contempt proceedings.)

■ Placid also raises substantive issues. First, Placid states that "the only reconventional demand that was filed in the State Court by Placid sought only post-confirmation damages and specifically excluded pre-confirmation claims and damages." *See* Appellant's Brief at p. 20. This is simply not true as the reconventional demand that it filed sought expenses and attorney's fees incurred in the bankruptcy proceeding and it sought damages for loss of business opportunity with respect to, and/or loss of use of, the funds owed to it by Terrebonne. However, after the first contempt order was issued Placid apparently deleted any claim for pre-confirmation *damages.*[12]

Placid also argues that "[t]he bankruptcy court totally ignored the order of the State Court that *ordered* the filing of the reconventional demand but limited damages to post-confirmation actions of Terrebonne." (Emphasis added.) This, again, is simply not true. The state court did not *order* Placid to file its reconventional demand; rather, the state court granted Placid leave to file the pleading. Also, nowhere in the state court's order granting Placid leave to file the recon-

---

11. The court also notes that Placid even had its own motion in front of the bankruptcy court requesting an order requiring Terrebonne to dismiss its state court action.

12. The bankruptcy judge, Judge Brahney, concluded that although Placid deleted its claims for pre-confirmation damages, it was still in contempt for pursuing a pre-confirmation claim. *See* Memorandum Opinion (Document No. 216). This court agrees.

ventional demand is there a limitation on the damages to post-confirmation actions of Terrebonne as Placid suggests.

In a stretch, Placid argues that the bankruptcy court failed to grasp that Terrebonne's use of the borrowing base reports in its state court action against Placid was a separate and distinct cause of action. *See* Appellant's Brief at p. 21. Placid argues that

First it must be realized that Terrebonne utilized the materially misrepresented borrowing base reports for two purposes. Terrebonne's first utilization of the materially misrepresented borrowing base reports was to purchase diesel fuel on credit during the term of the Agreement by certifying to Placid that it had excess positive collateral. The second utilization of the borrowing base reports was in the State Court proceedings wherein Terrebonne sought to use the same fraudulent borrowing base reports to establish that it had sufficient positive excess collateral to have ordered additional diesel fuel on credit which Placid failed to deliver.

*See id.*

Placid argues that it was the second use of the borrowing base reports that was the crux of the reconventional demand. However, the bankruptcy court seems to have concluded that this claim for damages should have been brought before the plan of reorganization was confirmed as the claim was discharged by the bankruptcy proceedings. Also, what Placid fails to appreciate is that while the fact that Terrebonne may have used materially misrepresented reports would provide a *defense* to Terrebonne's breach of contract claim, it could not, in light of the bankruptcy proceedings, give rise to an action for damages.

Placid seems to reveal its understanding of this basic concept when it states that

In the State Court proceedings one of Placid's *defenses* was that the borrowing base reports were false and that it had no obligation to deliver the diesel fuel that it actually delivered, much less the additional diesel fuel that Terrebonne allegedly ordered which was not delivered. The only procedure under Louisiana's law to claim such *damages* was by a reconventional demand.

*See* Appellant's Brief at p. 22. (Emphasis added.)

Placid was held in contempt on both occasions for pursuing a pre-confirmation claim based on pre-confirmation conduct. The fact that Placid at some point, and by some means not apparent in the record, informed the state court that it sought only post-confirmation damages is irrelevant as the actions that gave rise to the claim occurred pre-confirmation. Thus, the court accepts the findings and conclusions of the bankruptcy court and concludes that Placid was rightfully held in contempt of court for the prosecution of the pre-confirmation claim. Furthermore, the court concludes that the amount of the sanction levied against Placid was reasonable.

Accordingly,

IT IS ORDERED, ADJUDGED AND DECREED that the order of the bankruptcy court holding Placid in contempt and awarding sanctions in the amount of $18,357.48 in favor of Terrebonne be and is hereby **AFFIRMED.**

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Terrebonne's request in its cross-appeal that the amount of the sanction be increased be and is hereby denied; consequently, Terrebonne's cross-appeal is **DISMISSED.**

