**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: A. H. ROBINS COMPANY,
INCORPORATED,
<u>Debtor.</u>

SHARON LUTZ,
<u>Respondent-Appellant,</u>

and                                                                              No. 97-1618

PATRICIA L. SHEAR; FREDERICK H.
SHEAR,
<u>Respondents,</u>

v.

DALKON SHIELD CLAIMANTS TRUST,
<u>Movant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-85-1307-R)

Argued: December 3, 1997

Decided: January 13, 1998

Before WIDENER and HAMILTON, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed in part and vacated in part by unpublished per curiam opin-
ion.

**COUNSEL**

**ARGUED:** David Richard Parker, CHARFOOS & CHRISTENSEN, Detroit, Michigan, for Appellant. Orran Lee Brown, Sr., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is an appeal from the sanctioning of a Michigan attorney by the United States District Court for the Eastern District of Virginia for misconduct in her representation of two claimants against the Dalkon Shield Claimants Trust (the Trust). The sanction consisted of ordering the Michigan attorney to pay $2,646 to the Trust (the Monetary Sanction) and requiring the Trust to send any remaining claims payments due the Michigan attorney's 236 other Dalkon Shield clients directly to the clients, thus bypassing her (the Bypass Sanction). The attorney does not challenge the Monetary Sanction, but challenges the Bypass Sanction as an abuse of discretion primarily on the grounds that her misconduct did not involve her other Dalkon Shield clients and did not call into question her ability to handle client funds. For reasons that follow, we vacate the Bypass Sanction and affirm the unchallenged Monetary Sanction.

I.

A.H. Robins Company, Inc. entered Chapter 11 bankruptcy because of claims relating to the Dalkon Shield intrauterine device, a product it manufactured. On July 26, 1988, the district court approved A.H. Robins' Sixth Amended and Restated Plan of Reorganization (the Plan). We affirmed the Plan's confirmation in In re A.H. Robins Co., Inc., 880 F.2d 769 (4th Cir. 1989).

The Plan established the Trust, funded by A.H. Robins, to compensate parties injured by the use of the Dalkon Shield intrauterine device. Section 8.04 of the Plan directs all persons seeking compensation to follow the claim procedures set forth in the document entitled "Dalkon Shield Trust Claims Resolution Facility" (the CRF). Pursuant to § 8.05 of the Plan, the United States District Court for the Eastern District of Virginia retained exclusive jurisdiction to resolve disputes regarding interpretation and implementation of the Plan, the Trust, and the CRF. The district court confirmed its exclusive jurisdiction over these issues in an administrative order entered on June 26, 1991 (the June 1991 Administrative Order). In an order entered on November 2, 1993 in Dalkon Shield Claimants Trust v. Porter-Cooper, C.A. 85-01307R (the Porter-Cooper Order), the district court warned that any person who attempted to have other courts rule on such issues was in contempt of its exclusive jurisdiction and risked being held in civil contempt.

The CRF gives claimants against the Trust three options. The first option "is intended to resolve small claims with prompt payment to claimants and a minimum of transaction costs for the Trust." In re A.H. Robins Co., Inc., 109 F.3d 965, 966 (4th Cir. 1997). Under the second option, a claimant "may be eligible to receive more compensation based on fixed amounts for specified injuries categorized and listed in Exhibit A of the CRF." Id. Under the third option, a claimant "may be eligible upon proper proof to receive a greater amount of compensatory damages than allowed under" the first and second options. Id. With respect to the third option, a claimant:

> must complete a detailed claim form and provide medical records or evidence of use of the Dalkon Shield and all medical records of any injuries and damages alleged to have resulted from use of the Dalkon Shield. The Trust then fully evaluates the claim and makes a settlement offer. If the claimant rejects the settlement offer, the claimant may choose to proceed through In-Depth Review/Voluntary Settlement Conference or other voluntary alternative dispute resolution (ADR) process under § E.4 of the CRF. . . . If claimants continue to reject a settlement offer following this initial form of alternative dispute resolution, they may then choose either binding arbitration or traditional litigation.

3

Id.

In order to facilitate the voluntary settlement of claims, § G.4 of the CRF provides that all communications between the Trust and claimants are in the nature of settlement negotiations and are to be kept confidential. In the Porter-Cooper Order, the district court specified that § G.4 of the CRF prohibited any disclosure of the amounts of offers by the Trust under the third option, especially in an attempt to use such offer amounts against the Trust in litigation.

In addition to representing 236 other clients in their claims against the Trust, the attorney involved in this case, Sharon Lutz (Lutz), represented Patricia and Frederick Shear (the Shears) in their pursuit of claims against the Trust. The Shears chose to proceed under the third option of the CRF. After evaluating the claim form and medical records submitted by the Shears, the Trust made offers of settlement to the Shears. The Shears rejected the offers. The Shears then chose to proceed to the In-Depth Review/Voluntary Settlement Conference. This resulted in the Trust making the Shears final offers on May 13, 1992, which by their terms expired on August 3, 1992. Under the terms of the offers, acceptance could only be effected by the Trust's receipt of properly executed releases by 4:00 p.m. on August 3, 1992.

The Shears refused to accept the Trust's final offers, and instead, through Lutz, filed suit against the Trust in the United States District Court for the Western District of Michigan. With the Michigan suit pending, on August 16, 1993, Lutz informed the Trust by letter that the Shears had changed their minds and now intended to accept the Trust's final offers under the third option.

The Trust responded by letter dated September 3, 1993 that per the express terms of the offers, the offers were no longer open. Ignoring the Trust's response, on September 20, 1993, Lutz forwarded the Trust release forms executed by the Shears and directed that the Trust send her the settlement funds for distribution to the Shears. The Trust refused.

Not content with the Trust's response, Lutz filed a"Motion to Compel Rule 68 Offer of Judgment" (Rule 68 Motion) in the Michigan case. See Fed. R. Civ. P. 68. In that motion, Lutz disclosed the

4

amounts of the Trust's final offers to the Shears under the third option in violation of § G.4 of the CRF and the Porter-Cooper Order. She also asked the Michigan court to interpret the Plan and the CRF as requiring the Trust to allow the Shears to settle their claims against the Trust in violation of the district court's exclusive jurisdiction over Plan interpretation issues as provided in § 8.05 of the Plan and the June 1991 Administrative Order.

The Trust faxed a letter to Lutz on November 17, 1993 warning that the issue raised in her Rule 68 Motion before the United States District Court for the Western District of Michigan violated the exclusive jurisdiction of the United States District Court for the Eastern District of Virginia. The letter advised Lutz to withdraw the Rule 68 Motion and stated that if the Trust did not receive notice of such withdrawal by the close of business on Friday, November 19, 1993, the Trust would assume that she would not voluntarily do so. The letter was accompanied by a copy of the Porter-Cooper Order.

The next day, on November 18, 1993, Lutz faxed the Trust the following message: "Don't assume anything by November 19--I'm in depositions all day and won't even have a chance to look at this until next week. You'll hear from me [by] Nov. 29." (J.A. 392). The Trust responded the same day by faxing Lutz a letter emphasizing the district court's exclusive jurisdiction over interpretive matters involving the Plan, the Trust, and the CRF. The letter also stated that if Lutz did not agree to withdraw the Rule 68 motion by November 22, 1993, it would be left no choice but to file a motion with the district court in Virginia on November 23, 1993 to enforce the Plan and the district court's exclusive jurisdiction.

After Lutz failed to respond to the Trust's November 18, 1993 letter by November 22, 1993, the Trust filed a motion on November 23, 1993 to enforce the terms of the Plan against Lutz and the Shears, bringing to the attention of the district court Lutz's violations of the terms of the Plan, the CRF and the district court's orders (Motion to Enforce the Plan). The motion specifically sought an order requiring Lutz and her clients to cure the violations and directing such other relief as it saw appropriate.

The district court set a hearing on the Trust's Motion to Enforce the Plan at 1:00 p.m. on Friday, December 10, 1993, and Lutz was

5

properly notified. On November 30, 1993, Lutz withdrew the Rule 68 motion. The Shears ultimately abandoned their civil suit against the Trust in favor of proceeding through the ADR program.

Lutz failed to file a response to the Trust's Motion to Enforce the Plan and failed to appear for the hearing on December 10, 1993. At the hearing, the Trust presented evidence in support of its motion. Subsequently, the district court entered a brief order finding that Lutz, "through ignorance or deliberate misconduct," had violated its exclusive jurisdiction over interpretation of the Plan and the confidentiality provisions of § G.4 of the CRF. (J.A. 405). The order noted that Lutz and her clients had not responded to the Trust's Motion to Enforce the Plan and had not availed themselves of the opportunity to be heard, though a time for such hearing was set, ample notice of hearing was given, and the hearing was actually held. The order also indicated that Lutz's misconduct had resulted in additional expense to the Trust to the detriment of all claimants and that a subsequent order would be entered assessing costs against her. The district court further opined that Lutz's clients were innocent parties in the matter, and thus, would not be sanctioned.

On January 11, 1994, as directed by the district court, the Trust filed a statement showing that it had incurred $2,646 in legal fees as a result of Lutz's misconduct. Lutz did not file a response.

The issue of appropriate sanctions against Lutz remained dormant on the district court's docket until March 20, 1997. Then, as part of an effort to wind up pending Dalkon Shield matters, the district court ordered the Monetary Sanction and the Bypass Sanction against Lutz in a single order. In aid of the Bypass Sanction, the district court ordered Lutz to furnish the Trust with a list of addresses for her clients who were claimants against the Trust.[1] Lutz made a motion for reconsideration of the Bypass Sanction, which the district court denied.

_____

[1] Because all of Lutz's other Dalkon Shield clients have concluded their initial claims against the Trust and have been paid on those claims, the only remaining monetary obligation of the Trust to those claimants will arise once all the claims against the Trust have concluded. At that point, the remaining funds in the Trust are to be disbursed to all eligible claimants on a pro rata basis.

Lutz noted a timely appeal. On appeal, Lutz does not dispute that she violated the district court's exclusive jurisdiction over issues requiring interpretation of the Plan as set forth in§ 8.05 of the Plan and the June 1991 Order, and the requirement of confidentiality under the CRF and the Porter-Cooper Order. Accordingly, Lutz does not dispute that the district court acted properly in holding her in civil contempt for this misconduct. Furthermore, she does not challenge the Monetary Sanction. Lutz's only purpose in pursuing this appeal is to challenge the Bypass Sanction, and she does so on two bases: (1) the district court abused its discretion in imposing the Bypass Sanction and (2) the district court's failure to give her notice that it was contemplating the Bypass Sanction violated her rights to due process.

II.

In this appeal, we must determine whether the district court abused its discretion in imposing the Bypass Sanction on Lutz. Cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (reviewing sanctions imposed under Federal Rule of Civil Procedure 11 for abuse of discretion). A district court necessarily abuses its discretion in imposing a sanction if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Cf. id.

Presumably, the district court sanctioned Lutz pursuant to its authority under Bankruptcy Code § 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added); see also Matter of Volpert, 110 F.3d 494, 500 (7th Cir. 1997) (recognizing that bankruptcy court may impose sanctions in exercise of its authority to enter any necessary or appropriate orders under Bankruptcy Code § 105(a)); In re Walters, 868 F.2d 665, 669 (4th Cir. 1989) (recognizing Bankruptcy Code § 105(a) as empowering bankruptcy courts to hold parties or attorneys in civil contempt). The determination of what constitutes a "necessary or appropriate" sanction of an attorney under Bankruptcy Code

7

§ 105(a) must be considered in relation to the universal goals of sanctioning attorneys--compensation to the injured party, punishment and deterrence. Cf. Fahrenz v. Meadow Farm Partnership, 850 F.2d 207, 211 (4th Cir. 1988) (stating that what constitutes reasonable amount of sanction imposed under Rule 11, which speaks in terms of an "appropriate sanction," must be considered in relation to sanctioning goals of compensation, punishment, and deterrence).

We hold that the district court abused its discretion in imposing the Bypass Sanction against Lutz. We are at a loss to conceive of how, under this record, the Bypass Sanction could be considered necessary or appropriate to carry out the provisions of the Bankruptcy Code, including the goals of compensation to the injured party, punishment, or deterrence. First, the Trust was fully compensated by way of the Monetary Sanction. Second, there is no evidence to justify the highly unusual sanction of interfering with an attorney's relationships with her clients as necessary or appropriate to punish the attorney or deter her behavior in the future. This is especially so here, where the clients were not involved in the matters giving rise to the sanctions. Indeed, the record contains no evidence to support a finding of contemptuous conduct on Lutz's part with respect to her representation of her other Dalkon Shield clients and no evidence to support a finding that she is untrustworthy when it comes to handling her clients' funds. Third, the district court did not make any findings in support of, nor give any explanation for, the Bypass Sanction. Fourth, such findings and explanation are not self evident. Fifth and finally, we have been unable to find any case to support a sanction that interferes with an attorney's relationship with clients when the clients were not involved in the matters before the court giving rise to the sanctions. For these reasons, we vacate the portion of the district court's order imposing the Bypass Sanction and affirm the portion imposing the Monetary Sanction.**2**

AFFIRMED IN PART AND VACATED IN PART
_____

**2** In light of our disposition, Lutz's argument that her due process rights were violated by the Bypass Sanction is moot. We note, however, that any violations of Lutz's due process rights were remedied by the district court's consideration of Lutz's motion for reconsideration.